USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/2/17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

       - v. -                        :    INFORMATION

WILLIAM McFARLAND,                :    17 Cr. 600

       Defendant.                 :

- - - - - - - - - - - - - - - - - - x

## COUNT ONE
### (Wire Fraud)

The Acting United States Attorney charges:

### THE SCHEME TO DEFRAUD

1. From at least in or about 2016, up to and including in or about May 2017, WILLIAM McFARLAND, the defendant, conducted a scheme to defraud individuals by inducing them to invest millions of dollars in Fyre Media Inc. ("Fyre Media"), a digital media company (the "Company") that was founded and run by McFARLAND as Chief Executive Officer. McFARLAND started the Company to build a digital application that would allow individuals organizing commercial events, such as concerts, to bid for talent bookings at such events. McFARLAND orchestrated this scheme through several means and methods. These included, among others, the following:

    a. McFARLAND repeatedly made materially false statements to investors about the Company's revenue and income, and manipulated the Company's financial statements and supporting

JUDGE BUCHWALD

documentation to hide the Company's true financial condition. McFARLAND represented to investors that the Company had earned millions of dollars of revenue solely from talent bookings; a review of the Company's records shows that those numbers were significantly overstated. McFARLAND also provided falsified income statements to investors that purported to show that from approximately April 2016 to February 2017, the Company had earned millions of dollars in income from talent bookings. In reality, the Company's income from talent bookings from approximately May 2016 to April 2017 was only $57,443. In addition, McFARLAND provided falsified documents to investors showing over 2,500 confirmed talent bookings in a single month when, in fact, there were only 60 confirmed talent bookings in the entire year.

        b.    McFARLAND repeatedly made misrepresentations to investors designed to overstate the Company's financial condition and stability. For example, McFARLAND told investors that a reputable venture capital firm (the "VC Firm") had completed its due diligence process and had decided to invest in the Company. To the contrary, a VC Firm employee communicated to McFARLAND that the VC Firm would not invest in the Company without first completing its due diligence of the Company, which the VC Firm had not done due to McFARLAND's failure to provide many of the requested Company documents.

c. In late 2016, McFARLAND established a subsidiary of the Company (the "Subsidiary") to hold a music festival called the "Fyre Festival" (the "Festival") over two weekends in the Bahamas. McFARLAND made repeated misrepresentations to investors with respect to their investments in the Subsidiary for the Festival. McFARLAND overstated the Festival's receivables that he used as collateral for numerous investments to cover Festival expenses. McFARLAND also secured numerous investments in the Subsidiary by claiming that investors would have the rights to payouts from Festival event cancellation insurance policies when, in reality, no event cancellation insurance policies had been executed for the Festival. Ultimately, the Festival was cancelled and widely deemed to have been a failure.

d. McFARLAND also repeatedly made materially false statements to investors about his own financial condition. For example, in order to induce several investors to make an investment in the Company, McFARLAND provided an altered stock ownership statement to inflate the number of shares he purportedly owned in a publicly traded company (the "Publicly Traded Company"), so that it would appear that McFARLAND could personally guarantee the investment. In addition, despite the fact that McFARLAND's applications to two banks ("Bank-1" and "Bank-2") for millions in

personal loans had not been approved, McFARLAND misrepresented to investors that the monies from those bank loans could serve as collateral for their investments. On one occasion, McFARLAND sent an investor a snapshot of an email purporting to be from a Bank-1 banker ("Banker-1") to McFARLAND approving a $3 million dollar loan. Not only had Banker-1 not sent that email, Bank-1 had not approved McFARLAND's loan application.

      e. In order to influence Bank-1 and Bank-2 to grant McFARLAND's applications for millions of dollars in loans, McFARLAND falsely represented that he owned a greater number of shares in the Publicly Traded Company than he actually did. With respect to Bank-1, McFARLAND provided an altered stock ownership statement to inflate the number of shares he purportedly owned in the Publicly Traded Company, and a fraudulent income statement for the Company that showed grossly inflated revenue and income.

2. Through this scheme, WILLIAM McFARLAND, the defendant, caused losses to at least seventy victim-investors, totaling more than $20 million dollars.

## STATUTORY ALLEGATIONS

3. From at least in or about 2016, up to and including in or about May 2017, in the Southern District of New York and elsewhere, WILLIAM McFARLAND, the defendant, willfully and knowingly, having devised and intending to devise a scheme and

artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, McFARLAND engaged in a scheme to induce others to invest in the Company by, among other things, making false representations about the Company's financial condition and McFARLAND's own finances, and in connection therewith and in furtherance thereof, McFARLAND caused wire communications and wire transfers of funds to be sent in interstate commerce.

(Title 18, United States Code, Sections 1343 & 2.)

## COUNT TWO
### (Wire Fraud)

The Acting United States Attorney further charges:

### THE SCHEME TO DEFRAUD

4.   The allegations set forth in paragraphs 1 through 2 are incorporated by reference as if set forth fully herein.

5.   In or about April 2017, WILLIAM McFARLAND, the defendant, conducted a scheme to defraud a ticket vendor ("Vendor-1") by inducing Vendor-1 to pay two million dollars for a block of advance tickets for future Festivals over the next three years. McFARLAND also provided Vendor-1 with a fraudulent income

statement for the Company that grossly inflated the Company's revenue and income.

6.  McFARLAND signed a guaranty agreement (the "Guaranty Agreement") on behalf of the Company and the Subsidiary with Vendor-1 to unconditionally guarantee that Vendor-1 would receive no less than $2.4 million in sales proceeds from the sale of its pre-purchased Festival tickets. Vendor-1 relied on McFARLAND's misrepresentations overstating the Company's financial condition before entering into the Guaranty Agreement.

## STATUTORY ALLEGATIONS

7.  In or about April 2017, in the Southern District of New York and elsewhere, WILLIAM McFARLAND, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, McFARLAND engaged in a scheme to induce Vendor-1 to pay two million dollars for a block of advance tickets for future Festivals over the next three years by, among other things, making false representations about the Company's financial condition, and in connection therewith and in

furtherance thereof, McFARLAND caused wire communications and wire transfers of funds to be sent in interstate commerce.

(Title 18, United States Code, Sections 1343 & 2.)

## COUNT THREE
### (Making False Statements to a Bank)

The Acting United States Attorney further charges:

8. The allegations set forth in paragraphs 1 through 2 are incorporated by reference as if set forth fully herein.

9. From in or about late March 2017, up to and including late April 2017, in the Southern District of New York and elsewhere, WILLIAM McFARLAND, the defendant, did knowingly make a false statement and report in connection with a loan application, and the false statement and report was made for the purpose of influencing the actions of Bank-1, a financial institution the accounts of which were insured by the Federal Deposit Insurance Corporation, to wit, for the purpose of influencing Bank-1 to approve a loan application, McFARLAND overstated the value of securities he owned.

(Title 18, United States Code, Sections 1014.)

## COUNT FOUR
### (Making False Statements to a Bank)

The Acting United States Attorney further charges:

10. The allegations set forth in paragraphs 1 through 2 are incorporated by reference as if set forth fully herein.

7

11.   From in or about late March 2017, up to and including April 2017, in the Southern District of New York and elsewhere, WILLIAM McFARLAND, the defendant, did knowingly make a false statement and report in connection with a loan application, and the false statement and report was made for the purpose of influencing the actions of Bank-2, a financial institution the accounts of which were insured by the Federal Deposit Insurance Corporation, to wit, for the purpose of influencing Bank-2 to approve a loan application, McFARLAND overstated the value of securities he owned.

(Title 18, United States Code, Section 1014.)

### FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH FOUR

12.   As a result of committing the offenses charged in Counts One through Four of this Information, WILLIAM McFARLAND, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(2), any and all property constituting or derived from proceeds obtained directly or indirectly as the result of the commission of said offenses, including but not limited to a sum of money in United States

currency representing the amount of the proceeds traceable to the commission of said offenses.

### Substitute Assets Provision

13. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

    (a) cannot be located upon the exercise of due diligence;

    (b) has been transferred or sold to, or deposited with, a third person;

    (c) has been placed beyond the jurisdiction of the Court;

    (d) has been substantially diminished in value; or

    (e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), and 28, U.S.C. § 2461(c) to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property, including but not limited to all of the property set forth above.

(Title 18, United States Code, 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

 

_____
JOON H. KIM
Acting United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

WILLIAM McFARLAND,

Defendant.

### INFORMATION

17 Cr.

(18 U.S.C. §§ 1014, 1343 and 2.)

JOON H. KIM
Acting United States Attorney.