UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

          - v. -                  :

WILLIAM McFARLAND,                :

          Defendant.             :

- - - - - - - - - - - - - - - - - x

**SUPERSEDING INFORMATION**

S1 17 Cr. 600 (NRB)

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: ___ 0 6 2018

**COUNT ONE**
**(Wire Fraud)**

The United States Attorney charges:

## THE SCHEME TO DEFRAUD

1.    From at least in or about 2016, up to and including in
or about May 2017, WILLIAM McFARLAND, the defendant, conducted a
scheme to defraud individuals by inducing them to invest millions
of dollars in Fyre Media Inc. ("Fyre Media"), a digital media
company (the "Company") that was founded and run by McFARLAND as
Chief Executive Officer. McFARLAND started the Company to build
a digital application that would allow individuals organizing
commercial events, such as concerts, to bid for talent bookings at
such events. McFARLAND orchestrated this scheme through several
means and methods. These included, among others, the following:

          a.    McFARLAND repeatedly made materially false
statements to investors about the Company's revenue and income,
and manipulated the Company's financial statements and supporting

documentation to hide the Company's true financial condition. McFARLAND represented to investors that the Company had earned millions of dollars of revenue solely from talent bookings; a review of the Company's records shows that those numbers were significantly overstated. McFARLAND also provided falsified income statements to investors that purported to show that from approximately April 2016 to February 2017, the Company had earned millions of dollars in income from talent bookings. In reality, the Company's income from talent bookings from approximately May 2016 to April 2017 was only $57,443. In addition, McFARLAND provided falsified documents to investors showing over 2,500 confirmed talent bookings in a single month when, in fact, there were only 60 confirmed talent bookings in the entire year.

b. McFARLAND repeatedly made misrepresentations to investors designed to overstate the Company's financial condition and stability. For example, McFARLAND told investors that a reputable venture capital firm (the "VC Firm") had completed its due diligence process and had decided to invest in the Company. To the contrary, a VC Firm employee communicated to McFARLAND that the VC Firm would not invest in the Company without first completing its due diligence of the Company, which the VC Firm had not done due to McFARLAND's failure to provide many of the requested Company documents.

2

c.    In   late   2016,   McFARLAND   established   a
subsidiary of the Company (the "Subsidiary") to hold a music
festival called the "Fyre Festival" (the "Festival") over two
weekends    in    the    Bahamas.    McFARLAND    made    repeated
misrepresentations to investors with respect to their investments
in the Subsidiary for the Festival. McFARLAND overstated the
Festival's receivables that he used as collateral for numerous
investments to cover Festival expenses.   McFARLAND also secured
numerous investments in the Subsidiary by claiming that investors
would have the rights to payouts from Festival event cancellation
insurance  policies  when,  in  reality,  no  event  cancellation
insurance   policies   had   been   executed   for   the   Festival.
Ultimately, the Festival was cancelled and widely deemed to have
been a failure.

d.    McFARLAND  also  repeatedly  made  materially
false statements to investors about his own financial condition.
For example, in order to induce several investors to make an
investment in the Company, McFARLAND provided an altered stock
ownership statement to inflate the number of shares he purportedly
owned in a publicly traded company (the "Publicly Traded Company"),
so that it would appear that McFARLAND could personally guarantee
the investment. In addition, despite the fact that McFARLAND's
applications to two banks ("Bank-1" and "Bank-2") for millions in

3

personal loans had not been approved, McFARLAND misrepresented to investors that the monies from those bank loans could serve as collateral for their investments.  On one occasion, McFARLAND sent an investor a snapshot of an email purporting to be from a Bank-1 banker ("Banker-1") to McFARLAND approving a $3 million dollar loan.  Not only had Banker-1 not sent that email, Bank-1 had not approved McFARLAND's loan application.

        e.    In order to influence Bank-1 and Bank-2 to grant McFARLAND's applications for millions of dollars in loans, McFARLAND falsely represented that he owned a greater number of shares in the Publicly Traded Company than he actually did.  With respect to Bank-1, McFARLAND provided an altered stock ownership statement to inflate the number of shares he purportedly owned in the Publicly Traded Company, and a fraudulent income statement for the Company that showed grossly inflated revenue and income.

        f.    McFarland   also   made   materially   false statements to certain of the Company's investors about Magnises, a credit card and private club for millennials that was founded and run by McFARLAND as Chief Executive Officer.  McFARLAND told certain of the Company's investors that he had sold Magnises for approximately $40 million and made a profit of several million dollars personally from the sale, when in reality, McFARLAND had not sold Magnises.  McFARLAND also falsely stated to certain of

4

the Company's investors that specific individuals were the acquirers of Magnises, when in fact, they were not. McFarland also falsely stated to certain of the Company's investors that that a group of acquiring partners were forming a new company to purchase Magnises, when in fact, no such group existed.

2.      Through this scheme, WILLIAM McFARLAND, the defendant, caused losses to at least eighty victim-investors, totaling more than \$24 million dollars.

## STATUTORY ALLEGATIONS

3.      From at least in or about 2016, up to and including in or about May 2017, in the Southern District of New York and elsewhere, WILLIAM McFARLAND, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, McFARLAND engaged in a scheme to induce others to invest in the Company by, among other things, making false representations about the Company's financial condition and McFARLAND's own finances, and in connection therewith and in furtherance thereof, McFARLAND caused wire

5

communications and wire transfers of funds to be sent in interstate commerce.

(Title 18, United States Code, Sections 1343 & 2.)

## COUNT TWO
### (Wire Fraud)

The United States Attorney further charges:

### THE SCHEME TO DEFRAUD

4.    The allegations set forth in paragraphs 1 through 2 are incorporated by reference as if set forth fully herein.

5.    In or about April 2017, WILLIAM McFARLAND, the defendant, conducted a scheme to defraud a ticket vendor ("Vendor-1") by inducing Vendor-1 to pay two million dollars for a block of advance tickets for future Festivals over the next three years. McFARLAND also provided Vendor-1 with a fraudulent income statement for the Company that grossly inflated the Company's revenue and income.

6.    McFARLAND signed a guaranty agreement (the "Guaranty Agreement") on behalf of the Company and the Subsidiary with Vendor-1 to unconditionally guarantee that Vendor-1 would receive no less than $2.4 million in sales proceeds from the sale of its pre-purchased Festival tickets. Vendor-1 relied on McFARLAND's misrepresentations overstating the Company's financial condition before entering into the Guaranty Agreement.

## STATUTORY ALLEGATIONS

7.   In or about April 2017, in the Southern District of New York and elsewhere, WILLIAM McFARLAND, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, McFARLAND engaged in a scheme to induce Vendor-1 to pay two million dollars for a block of advance tickets for future Festivals over the next three years by, among other things, making false representations about the Company's financial condition, and in connection therewith and in furtherance thereof, McFARLAND caused wire communications and wire transfers of funds to be sent in interstate commerce.

(Title 18, United States Code, Sections 1343 & 2.)

## FORFEITURE ALLEGATION

8.   As a result of committing the offenses charged in Counts One and Two of this Superseding Information, WILLIAM McFARLAND, the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code,   Section 982(a)(2), any and all property constituting or derived from proceeds obtained directly

7

or indirectly as the result of the commission of said offenses, including but not limited to a sum of money in United States currency representing the amount of the proceeds traceable to the commission of said offenses that the defendant personally obtained.

## Substitute Assets Provision

9.    If any of the above described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), and 28, U.S.C. § 2461(c) to seek forfeiture of any other property of the defendant up to the value of the above

forfeitable property, including but not limited to all of the

property set forth above.

    (Title 18, United States Code, 982;  Title 21, United States
Code, Section 853; and Title 28, United States Code, Section
2461.)

                                         Geoffy S. Berman
                                    GEOFFREY S. BERMAN
                                    United States Attorney

9

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

WILLIAM McFARLAND,

Defendant.

## SUPERSEDING INFORMATION

S1 17 Cr. 600 (NRB)

(18 U.S.C. §§ 1343 and 2.)

GEOFFREY S. BERMAN
United States Attorney.