```
     I6i1mcfh

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,

4              v.                            17 Cr. 600 (NRB)

5    WILLIAM McFARLAND,

6              Defendant.                    Bail Revocation Hearing

7    ------------------------------x

8                                            New York, N.Y.
                                             June 18, 2018
9                                            2:36 p.m.

10
     Before:
11
                    HON. NAOMI REICE BUCHWALD,
12
                                             District Judge
13

14                         APPEARANCES

15   GEOFFREY S. BERMAN
          United States Attorney for the
16        Southern District of New York
     BY:  KRISTY J. GREENBERG
17        Assistant United States Attorney

18   BOIES SCHILLER FLEXNER LLP
          Attorneys for Defendant
19   BY:  RANDALL W. JACKSON, ESQ.

20   ALSO PRESENT:  BRANDON RACZ, Special Agent, FBI

21   ALSO PRESENT:  TIFFANY FRANCIS, Pretrial Services Officer

22

23

24

25
```

1               (Case called)

2               THE LAW CLERK:  Is the government present and ready to
3      proceed?

4               MS. GREENBERG:  Yes, your Honor.  Kristy Greenberg for
5      the government, and with me at counsel table is FBI Special
6      Agent Brandon Racz and Pretrial Services Officer Tiffany
7      Francis.  Good afternoon.

8               THE LAW CLERK:  Is the defendant present and ready to
9      proceed?

10              MR. JACKSON:  Yes.  Good afternoon, your Honor.
11     Randall Jackson on behalf of the defendant William McFarland.

12              THE COURT:  All right.  I think the government has an
13     application?

14              MS. GREENBERG:  Yes, your Honor.  The government seeks
15     that Mr. McFarland's bail in this case be revoked.

16              THE COURT:  All right.  I guess, Mr. Jackson,
17     candidly, the question to you is, why not?

18              MR. JACKSON:  Your Honor, I'm inclined to ask the
19     Court, or my inclination had been to say to the Court that we
20     would likely want to consent at this point to detention and put
21     it off for some time in order to allow us to determine whether
22     or not there is an appropriate bail application to be made.  As
23     the government set out in its letter, the burden is on us to
24     demonstrate by clear and convincing evidence that Mr. McFarland
25     should not be detained.

1     I would note that after hearing the government's
2     presentation of proof, Judge Gorenstein concluded that there
3     were conditions in the underlying case here that could be set
4     that would reasonably assure the defendant's presence, and he
5     described those conditions.  He set those conditions out in his
6     order.  I think the reason that he did so is because, while we
7     completely understand that Mr. McFarland is charged here with
8     very serious crimes in the complaint, there are just three
9     factors that I think we identified for Judge Gorenstein, and
10    that is:
11         1.   That Mr. McFarland has been in the district
12    throughout the entire time, and apart from what is alleged here
13    and is largely a complaint based on the testimony of witnesses,
14    Mr. McFarland has complied with pretrial services; he's
15    attended every meeting that's been requested of him; he's
16    attended every court appearance.
17         2.   He waived indictment.  He appeared, he pled guilty
18    very early on and acknowledged responsibility.
19         And I would just note, your Honor, the third thing
20    that we identified for Judge Gorenstein is that at the time
21    that we first became aware of this investigation, which was
22    probably a week before the government made it public,
23    approximately, I actually went to the government and said,
24    we're hearing about this investigation, Mr. McFarland has heard
25    about it, we'd like the opportunity to, if there's anything

I6i1mcfh

1    that you think is amiss, to come in and talk with you,
2    Mr. McFarland would like to come in and talk with you, answer
3    any questions that the FBI agents have.  So for some period of
4    time after Mr. McFarland became aware of this, he was still
5    attempting to keep an open dialogue with the government, and he
6    didn't flee, and he never has fled, and he's been facing a very
7    significant term of imprisonment pursuant to his guilty plea
8    and the plea agreement we have with the government throughout
9    the entire time that he's been on release.
10           So I think that those factors led Judge Gorenstein to
11   conclude that that there were conditions that could be set on
12   the underlying charges that would reasonably assure his
13   presence.
14           Now we understand that the burden is different before
15   your Honor because of the circumstances of a violation in this
16   case, where he has already pled guilty, but at least
17   preliminarily, your Honor, we believe that those are reasons
18   that the Court could determine that we can demonstrate by clear
19   and convincing evidence -- namely, the history of the defendant
20   in this case, his failure to run, and the nature of the charges
21   here -- that would assure that he would appear.
22           THE COURT:  But you're not making a bail application
23   at this time, is that correct?
24           MR. JACKSON:  Your Honor, I think at this time we are
25   I guess asking for some guidance from the Court about what

1  we're looking for, what we're looking towards in terms of going
2  forward, but if the Court thinks that it would be more prudent
3  for us to not make the application at this time, we would defer
4  to the wisdom of the Court.
5         THE COURT:  It would be more prudent.
6         MR. JACKSON:  Your Honor, we're going to reserve.
7  Thank you.
8         THE COURT:  But you raised the issue of going forward.
9  And Mr. McFarland was supposed to be sentenced in this case
10 three days from now, the 21st.  And I know the government asked
11 to adjourn that, but I'm not sure what's being contemplated by
12 the parties.  Certainly the new charges are not assigned to me.
13 There's not yet been an indictment.  I don't know what the
14 government's plans are with respect to that.  I don't know what
15 the defendant's plans are.  So I need a little guidance from
16 the parties about the schedule for proceeding in terms of the
17 sentencing in my case.
18        MS. GREENBERG:  Yes, your Honor.  We had 14 days, so
19 we do anticipate proceeding with an indictment very soon, and
20 in connection with that, we would submit to your Honor a letter
21 that we believe this is a related case -- namely, the victims
22 of the ticket fraud scheme that we have charged by complaint
23 are customers who had tried to attend or attended the Fyre
24 Festival, as well as individuals who were on a Magnises
25 customer list.  So in some respects these are related cases.

1    So that would obviously be up to your Honor whether or not you
2    would then want to also take on that new case once that was
3    charged.
4             As far as proceeding with the sentencing in this
5    matter, we do think that some schedule that allows time for the
6    probation office to consider the new charges and in particular
7    to consider evidence as it pertains to the lack of candor from
8    the defendant in disclosing what he had been up to with respect
9    to New York City VIP Access as his current employment, that
10   strikes us as a material false statement and omission to the
11   probation office in connection with the PSR in this case.  So
12   we would want to give that information to probation and allow
13   probation the opportunity to amend its PSR accordingly, as well
14   as potentially its recommendation as to a sentence in this
15   case.  We believe we can provide that information in the short
16   term.  In the next I would say two weeks we can provide
17   probation with what we have.  I don't know how long it would
18   take for probation to then potentially amend its report.  But I
19   would imagine some period of time for sentencing that's maybe
20   just a few months out may be appropriate.
21            One other matter that the parties are still discussing
22   but I would note, as part of the current PSR, there was
23   relevant conduct alleged as part of the offense conduct summary
24   with respect to fraudulent statements that were made to
25   investors of Magnises.  I believe in the PSR that is

1    paragraph -- just bear with me a moment -- 24.  There was no
2    objection to that paragraph in the PSR by defense, but there is
3    a footnote in the defense submission -- it's on page 8,
4    footnote 2 -- that states that basically the Court should not
5    consider this as relevant conduct, that no discovery was
6    produced with respect to the fraud on Magnises investors, and
7    that it should not be considered by the Court.  We strongly
8    disagree.  Part of the reason why there was some immunity for
9    Mr. McFarland in the plea agreement with respect to Magnises'
10   fraud on investors was because we always intended for that to
11   be part of the Court's consideration as relevant conduct.  So
12   we are speaking with defense counsel on this matter to
13   determine if they want discovery on this and whether or not
14   they intend to dispute any of the facts relating to
15   Mr. McFarland's fraudulent statements to Magnises investors.
16   If they do choose to dispute any of those facts, we consider
17   those material and that could result in a *Fatico* hearing.
18   Again, we're not there yet.  We're still discussing it and
19   trying to ascertain defense counsel's position as to this
20   matter, but I flag it for the Court because that would also
21   affect the timing of sentencing.
22            THE COURT:  Mr. Jackson?
23            MR. JACKSON:  So your Honor, we've generally had a
24   very good communication with the government prior to this
25   incident, and even since this occurred we've had collegial,

1   good communication with the government.  It's a bit frustrating
2   in terms of figuring out how we're supposed to respond going
3   forward.  As the Court knows, while the government was
4   investigating this, just a day or two before they announced the
5   charges, we put in a lengthy sentencing submission.  I think it
6   would have been helpful to know that we were looking at a
7   potential adjournment, but I understand those decisions had to
8   be made.  We are now in a situation where there are -- we don't
9   think that there's any *Fatico* hearing that could be called for.

10            In terms of the question of the Magnises allegations
11  that Ms. Greenberg is talking about, we would submit, the only
12  point that we were making in our footnote is that that is
13  alleged conduct that is so tangential to what actually was
14  charged here and it's so limited that we're asking the Court as
15  a legal matter to not focus on that as a relevant fact in terms
16  of the determination of how 3553(a) factors play out in this
17  case.  I think that's a determination for the Court.  I don't
18  think that it's a matter of a serious factual dispute that
19  would require a *Fatico* hearing.

20            The question as to whether or not these new charges
21  warrant postponing the sentence, I have to agree with the AUSA.
22  I think we probably need just a bit of time to figure out how
23  we're going to handle this.  Again, we've been in open
24  communication with the government, trying to understand these
25  charges, which we just learned about at the end of last week,

1    but I think it would probably be in the Court's interest and in
2    the party's interest if we briefly adjourn sentencing and
3    attempted to figure out how the government is going to deal
4    with the new charges and how we're going to respond to the new
5    charges and whether or not there is something to be done after
6    that.
7              Having said that, your Honor, if the Court is inclined
8    to proceed with sentencing, we're prepared.  We've put in a
9    sentencing submission.  And we would really defer to the wisdom
10   of the Court as far as the scheduling.
11             THE COURT:  Well, I don't object to a sort of short
12   adjournment to get some clarity as to what's going to happen
13   with respect to the new charges, but I don't think that there
14   would be much purpose in a really extended adjournment, or at
15   least I would say that we ought to start with a relatively
16   short adjournment, and the parties can keep me up to date as to
17   what's happening with the new charges and I'll consider whether
18   that ought to affect the sentencing here.
19             I don't totally disagree with the government that it
20   might make sense if, ultimately, there is an indictment that's
21   wheeled out, that potentially it be transferred to me, but it's
22   always up to the judge who gets the case.  Randomly, it could
23   be me, but again, whether that makes real sense depends on the
24   defense reaction to any such indictment.
25             All right.  So let's try to think about dates and what

I6i1mcfh

1  really makes some sense.
2             What about adjourning sentencing until July 26th at
3  2:15?
4             MS. GREENBERG:  That's fine for the government.
5             MR. JACKSON:  That's fine for us.  Thank you, your
6  Honor.
7             THE COURT:  All right.  So what I would expect is that
8  the parties keep me up to date on whether there's an
9  indictment, who it's wheeled out to, and anything else that
10 might be relevant.  And I guess officially, there was a motion
11 to revoke bail, and the motion is granted.
12            Is there anything else?
13            MS. GREENBERG:  I just want to clarify two things:
14 One, just whether or not defense counsel was consenting to
15 detention without prejudice to making an application at a later
16 time or just consenting to detention; and then two, just to
17 clarify again that with respect to paragraph 24 of the PSR
18 relating to the fraud on Magnises' investors, that there is no
19 factual dispute as to that paragraph and that defense is not
20 seeking any discovery with respect to that issue.
21            MR. JACKSON:  So with regard to the first question,
22 your Honor, we are consenting without prejudice to a future
23 application if we believe that the evidence is appropriate to
24 make an application before your Honor.
25            THE COURT:  Okay.

MR. JACKSON: With regard to the second question, we are not contesting the facts within the PSR. I would like to think a bit more about whether or not we're requesting any discovery. I guess I would like to see the government's sentencing submission and see what it is the government has to say about this, which we think is a relatively tangential issue.

Also, I suppose I would ask your Honor, in light of everything that's transpired, it's probably appropriate to set at least tentative dates for the government's new submission and a response from us. Thank you.

THE COURT: All right. Let me just also sort of state very briefly why I'm granting the government's motion.

I do think that with these new charges, combined with the forthcoming sentence, that there is a serious risk of flight as well as danger, in a nonviolent sense, to the community. And the other part of the thinking is that as a practical matter, I think everyone is aware and it should not come as a surprise that given the magnitude of the fraud in the initial case, that Mr. McFarland was going to face some jail time. I have not read the sentencing submissions, so I say that without any specific knowledge. So in effect, his detention at this time is the beginning of his sentence, as a practical matter. It's something for which he, in a sense, obtains full credit.

1      So as far as sentencing submissions, I gather -- as I
2 said, I haven't read them -- that the defense has put in a
3 submission.  When was the government supposed to do theirs?
4      MS. GREENBERG:  I believe last Wednesday.
5      THE COURT:  Okay.  Why don't we say that the
6 government's submission should be due on July 11th, with the
7 defense submission due July 18th.  Okay?
8      MR. JACKSON:  Yes.  Thank you, your Honor.
9      THE COURT:  All right.  Thank you.
10      Is there anything else?
11      MR. JACKSON:  May I raise one other small issue.
12      THE COURT:  Sure.
13      MR. JACKSON:  I just want to alert the Court, I intend
14 to submit a letter to the Court and a proposed order to allow
15 Mr. McFarland to have his glasses at the MDC.  I've been told
16 that I need a court order, so I just wanted --
17      THE COURT:  Really?
18      MR. JACKSON:  That's what I've been informed.  So I'm
19 just --
20      THE COURT:  I've never signed such an order, and I've
21 been here 38 years, so --
22      MR. JACKSON:  I've never requested one, but I'll check
23 again.  That's the information that I have.
24      THE COURT:  Okay.
25      MR. JACKSON:  I brought his glasses, but I can't give

I6i1mcfh

1   them to him directly.  So I'll look again, but I may be
2   submitting a brief letter to the Court on that issue.  I'll
3   check again, your Honor, with the legal department.
4             THE COURT:  Does the government have any knowledge
5   of --
6             MS. GREENBERG:  I've never heard that before.
7             THE COURT:  I often have defendants who have glasses.
8             MR. JACKSON:  I know, your Honor.  I've never heard of
9   it.
10            THE COURT:  Is the problem because Mr. McFarland
11  wasn't wearing his glasses when he was arrested?
12            MR. JACKSON:  That's my guess.
13            THE COURT:  And that it's because it's being handed
14  to --
15            MR. JACKSON:  That's my sense.
16            THE COURT:  -- him through you at this point?
17            MR. JACKSON:  I believe that's correct.  I believe
18  that's correct.  There may be --
19            THE COURT:  So the concern is what's in the frames.
20            MR. JACKSON:  Exactly, Judge.  Exactly.
21            THE COURT:  Okay.  We've all watched a lot of movies,
22  right?
23            MR. JACKSON:  Indeed, Judge.
24            THE COURT:  Okay.  Okay.  So send me something.  I
25  suspect that that's what it is, and maybe I can magically make

I6i1mcfh

1   it happen.
2           MR. JACKSON:  Thank you, your Honor.
3           THE COURT:  Okay.  All right.  Thank you.
4           MS. GREENBERG:  Thank you.
5                           o0o