# EXHIBIT B

**PAPERWORK REDUCTION Act Statement**

A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subjected to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that Control Number for this information collection is 2106-0005. Public reporting for this collection of information is estimated to be approximately 30 minutes per response, including the time for reviewing instructions, completing and reviewing the collection of information. All responses to this collection of information are voluntary. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, U.S. Department of Transportation, Office of International Aviation, X-16, 1200 New Jersey Avenue SE, Suite W-86-445, Washington, DC 20590.

For DOT Use Only --PC No. _____ Waiver No. _____

**U.S. Department of Transportation**
**Office of the Secretary of Transportation**

## STATEMENT OF CHARTER OPERATOR AND DIRECT AIR CARRIER
### FLIGHT SCHEDULE NUMBER _____

INSTRUCTIONS: Date of filing for purposes of DOT regulations is the date properly completed forms are received by DOT.

**1a.** Name (and DBA, if applicable) and Mailing Address of Charter Operator

FYRE FESTIVAL, LLC
52 LISPENARD ST. TH1
NEW YORK, NY 10013

**1b.** Telephone Number ( ) 973-868-6277
Fax Number ( )

**2a.** Name (and DBA, if applicable) and Mailing Address of Direct Air Carrier:

SWIFT AIR, LLC
SKY HARBOR INTERNATIONAL AIRPORT
2710 EAST OLD TOWER ROAD
PHOENIX, AZ 85014

**2b.** Telephone Number ( ) 866-227-9438
Fax Number ( )

**3.** Proposed date and routing of each flight: (use additional pages, if necessary)

SEE ATTACHED SCHEDULE

**4.** Type of aircraft and number of seats engaged:

B737-400   150 SEATS
B737-300   148 SEATS
B737-800   164 SEATS

**5.** Charter price of each flight:*

$ $30,000

**6.** Tour Itinerary (if any) including hotels (names and length of stay at each), and other accommodations and services:

*If confidentiality is desired, please state charter price in separate correspondence.

OST Form 4532

OST 4530, 37-35 Form

EXHIBIT B

We, _FYRE FESTIVAL LLC_
(Charter Operator)

and _SWIFT AIR LLC_
(Direct Air Carrier)

certify that we have entered into a charter contract on _4/1/2017_ (Date) that covers the flight schedule described above. The contract complies with all applicable DOT regulations.

7. A copy of the flight schedule has been sent to (complete applicable blanks and write "N.A." in those not applicable):

FIRST WESTERN TRUST   SHELBY FINANCIAL
(Charter Operator's Escrow)

First Western Trust
(Charter Operator's Depository Bank)

SHELBY FINANCIAL NA
(Direct Carrier's Escrow)

WSFS Bank
(Direct Carrier's Depository Bank)

8. Applicant is a U.S. Public Charter Operator as defined in Section 380.2 of the Department's regulations:

_____   _____   _____
(Signature of Officer)      (Name in print)              (Title)

9.
**CHARTER OPERATOR**
BY: _[signature]_
William McFarland
(Name in print)
CEO, Fyre Festival LLC
(Title)
973-898-6277
(Phone Number)   (Fax Number)
52 Lispenard St, TH1
(Street, Box Number)
New York, NY 10013
(City, State, Zip Code)
4/20/17
(Date)**

**DIRECT AIR CARRIER**
BY: _[signature]_
JOE GAZAGA
(Name in print)
VP LATIN AMERICA + CARIBBEAN
(Title)
(305) 649-5375
(Phone Number)   (Fax Number)
MIAMI INT'L AIRPORT
(Street, Box Number)
MIAMI, FL 33152
(City, State, Zip Code)
4/20/17
(Date)**

**This document is not acceptable if not dated.

OMB No. 2106-0005

**Paperwork Reduction Act Statement**

A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2106-0005. Public reporting for this collection of information is estimated to be approximately 30 minutes per response, including the time for reviewing instructions, completing and reviewing the collection of information. All responses to this collection of information are voluntary. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, U.S. Department of Transportation, Office of International Aviation, X-40, 1200 New Jersey Avenue SE, Suite W-86-445, Washington, DC 20590.

## STATEMENT OF CHARTER OPERATOR, DIRECT AIR CARRIER AND DEPOSITORY BANK

**U.S. Department of Transportation**
**Office of the Secretary of Transportation**

INSTRUCTIONS: Date of filing for purposes of DOT regulations is the date properly completed forms are received by DOT.

We **FYRE FESTIVAL, LLC** (Charter Operator) **SWIFT AIR, LLC** (Direct Air Carrier)

and **First Western Trust** (Depository Bank), certify that we have entered into a depository agreement on **4/20/17** (Date). This agreement covers proposed flight schedule number **A-001** (Flight Schedule Number), a copy of which has been received by **First Western Trust** (Depository Bank). This agreement complies with (§380.34) (§380.34a) of DOT's Regulations (14 CFR §380.34 or §380.34a). The depository bank is insured by the Federal Deposit Insurance Corporation.

As signatories to this agreement, we fully understand, and will completely fulfill our respective obligations outlined in the agreement and the above-stated DOT regulations.

**CHARTER OPERATOR**
BY: [signature]
William McFarland (Name in print)
CEO, Fyre Festival LLC (Title)
973-868-6277 (Phone Number), _____ (Fax Number)
52 Lispenard St, TH1 (Street, Box Number)
New York, NY 10013 (City, State, Zip Code)
4/20/17 (Date)

**DIRECT AIR CARRIER**
BY: [signature]
Joe Lazaea (Name in print)
VP Latin America + Caribbean (Title)
(505) 629-5355 (Phone Number), _____ (Fax Number)
Miami Int'l Airport (Street, Box Number)
Miami, FL 33152 (City, State, Zip Code)
4/20/17 (Date)

**DEPOSITORY BANK**
BY: [signature]
Fabian Duran (Name in print)
Vice-President (Title)
303-640-4040, 363-640-4057 (Phone Number, Fax Number)
1900 16th St Suite 500 (Street, Box Number)
Denver CO 80202 (City, State, Zip Code)
4/25/17 (Date)

*Write "N.A." if there is no charter operator

*This document is not acceptable if not dated.

OST Form 4534

CERTIFICATION OF THE PUBLIC CHARTER OPERATOR,
DIRECT AIR CARRIER, AND ESCROW BANK

__FYRE FESTIVAL__, __SWIFT AIR__, and ~~Shelby Financial~~ First Western Trust certify that we will comply with all the
(Public Charter Operator)    (Direct Air Carrier)    (Escrow Bank)

regulatory requirements in 14 CFR Part 380. In particular, we certify that the following statements are true and accurate. If your Public Charter program is secured by an escrow account pursuant to 14 CFR 380.34(b), you should begin at item number 1. Go directly to item number 4 if your Public Charter program is covered by a security agreement pursuant to 14 CFR 380.34(a)).

1) __The Public Charter Operator and Direct Air Carrier__ certify that the contract between the charter operator and the direct air carrier covers the full price of the air transportation, including the cost of aircraft, crew, maintenance, insurance, fuel, ground handling, landing fees, passenger fees and taxes, and all other costs associated with the direct air transportation.
   Yes _X_ (Go directly to item number 3)     No ___ (You must complete item number 2)
   N/A ___ (e.g., for Direct Sales Programs conducted under 14 CFR 212.7)

2) __The Public Charter Operator__ certifies that all passenger funds in the charter program will be deposited in the Public Charter Operator's escrow bank (less travel agent and credit card fees under 14 CFR 380.34 (b)) and that it will provide sufficient instructions to the escrow bank in order for the bank to comply with the requirements of 14 CFR 380.34(b); the __Escrow Bank__ certifies that it will maintain a full and accurate accounting of disbursements to all vendors, fuel or ground handling providers, and other expense categories, e.g., taxes, in accordance with 14 CFR 380.34(b).

   Yes ___ (Go directly to item number 3)     No ___ (Stop – this filing will not be accepted)

3) __The Public Charter Operator__ certifies that no debit cards will be accepted from passengers for air transportation payments unless the Public Charter Operator receives an assurance from the merchant bank(s) that the credit card/debit card processors will provide the same chargeback protections to those passengers using debit cards that are provided to credit card users.

   Yes _X_ (Go directly to item number 5)     No ___ (Stop – this filing will not be accepted)

4) __The Public Charter Operator__ certifies that the security instrument maintained for the charter program pursuant to 14 CFR 380.34(a) is unlimited or at least equal to the full cost of the air transportation.[1] The full cost of the air transportation includes the cost of aircraft, crew, maintenance, insurance, fuel, ground handling, landing fees, passenger fees and taxes, and all other costs associated with the air transportation.

   Yes ___ (Go directly to item number 5)     No ___ (Stop – this filing will not be accepted)

---

[1] For programs being conducted pursuant to a waiver from the full bonding requirement, check "yes" and include waiver number.

5) The Public Charter Operator certifies that it will maintain access to the reservation records as required by existing rules and share this information with the direct air carrier in case of a disruption in the charter program in order to assist the direct air carrier in complying with its regulatory obligations under 14 CFR 212.3(f). The Direct Air Carrier certifies that it will request from the Public Charter Operator all the information necessary to return passengers that it transported on the outbound flight and has a regulatory responsibility to return to their point or origin in the event of a disruption of the Public Charter program.

Yes _X_ (Go directly to item number 6)    No_____ (Please Explain below[2] then go directly to item number 6)

_____

_____

6) The Public Charter Operator certifies that it does not sell vouchers to passengers for travel at unspecified dates in the future. Purely gratuitous or complimentary vouchers distributed for passenger goodwill are not covered by this certification.

Yes _X_    No_____ (Stop – this filing will not be accepted)

[CHARTERER]

By: _William E. McFarland_

[name and title—if applicable]
William McFarland, CEO, Fyre Festival LLC

Date: 4/20/17

[CARRIER]

By: _____

[name title—if applicable] JOE LAZAGA - VP LATIN AMERICA + CARIBBEAN

Date: 4/20/17

[BANK]

By: _____

[name and title—if applicable]
Fabian Duran - Vice President

Date: 4/25/17

---

[2] This obligation does not apply to direct air carriers that are not subject to section 212.3(f).

EXHIBIT B

# Public Charter Depository Agreement

This agreement, made and entered into as of __4/1/2017__ (date), by and among

__Fyre Festival LLC__ (charter operator), a __Delaware__ (state or country) corporation ("Charterer")

__Swift Air LLC__ (direct air carrier), a _____ (state or country) corporation ("Carrier") and

__First Western Trust__ (depository bank), an FDIC-insured depository institution ("Bank").

Whereas Charterer is a charter operator or foreign charter operator within the meaning of 14 CFR Part 380 of the regulations of the Department of Transportation ("DOT") and intends to market Public Charter flight(s) to be flown by Carrier ("Charter Flights") to charter participants ("Participants"); and

Whereas Bank (a depository institution whose deposits are insured by the Federal Deposit Insurance Corporation) desires to act as the depository bank within the meaning of Part 380, subject to the terms and conditions contained herein;

Now, therefore, in consideration of the mutual agreements contained herein, the parties hereto agree, under the terms of Part 380 as follows:

## Section 1: Deposits

1.1 Bank shall establish a special account into which Charterer and Bank shall cause all funds received by Charterer or its agents on behalf of Participants to be deposited ("Account"). Bank shall maintain a separate accounting with respect to each charter group encompassed by the charter flight program.

1.2 All funds received by Bank and required to be maintained by Bank under this Agreement ("Total Deposits") shall be disbursed, paid out, or reduced in amount only as provided herein; provided, however, that nothing herein shall prevent Bank from commingling all or any portion of the Total Deposits in accordance with generally accepted banking practice.

1.3 On all sales made directly by Charterer, Charterer shall cause Participants to remit all payments in the form of a check, or money order, or credit card transaction payable to Bank. Charterer shall deliver such checks, money orders, or credit card transactions to Bank within five business days after receipt.

1.4 In the event Charterer markets the Charter Flight through retail travel agents, payments may be made to the retail agents in any form and the retail travel agents may deduct their commissions from such payments, and remit the balance by check, or money order, or electronic transfer payable to Bank. Travel agents shall remit such payments to Bank within five business days after receipt; provided, that Charterer and each retail travel agent shall enter into a written agreement requiring that, if the Charter Flight is canceled, the travel agent shall remit to Bank the full amount of the commission previously deducted or received within five days after receipt of notice of cancellation of the Charter Flight.

2

### Section 2: Disbursements

2.1 Subject to the limitation expressed in Section 2.2 hereof, Bank shall disburse funds from the Account directly to:

(a) Carrier (or depository bank)[1] in an amount equal to the balance of the charter price due for each Charter Flight. Such payment is to be made no earlier than 60 days prior to, and no later than, the scheduled date of the originating flight.[2] With respect to each Charter Flight, Bank shall receive a certificate (in the form attached hereto as Schedule A), signed by both Carrier and Charterer, specifying the exact amount due, the date on which payment is due, and the address to which payment is to be sent.

(b) Charterer, as reimbursement for refunds made by it to Participants by reason of a Participant's cancellation of his or her reservation on a Charter Flight, in an amount equal to the amounts set forth in written notification from Charterer to Bank. Refunds may be made directly to Participants upon written notification to Bank from Charterer of the amounts due to such canceling Participants.

(c) Participants, in an amount equal to the amount paid by or on behalf of such Participants for a particular Charter Flight, within five business days after receipt by Bank of notification by Carrier or Charterer that such Charter Flight has been canceled.

(d) Hotels, sightseeing enterprises, or other persons or companies furnishing ground accommodations or services in connection with charter flight, if any, upon presentation to Bank of vendor's bills and upon certification by Charterer of the amounts payable and the persons or companies to whom payment is to be made. Such payments shall not be made until the charter price has been paid in full to Carrier.

(e) Notwithstanding any of the provisions of this Section, the amount of total cash deposits required to be maintained in the Account may be reduced by one or both of the following: the amount of any security agreement in the form prescribed by Part 380 in excess of the minimum coverage required by section 380.34(b); an escrow with the Bank of Federal, State, or municipal bonds or other securities, consisting of certificates of deposit issued by banks having a stated policy of redeeming such certificates before maturity at the request of the holder (subject only to such interest penalties or other conditions as may be required by law), or negotiable securities which are publicly traded on a securities exchange, all such securities to be made payable to the Account; provided, that such other securities shall be substituted in an amount no greater than 80 percent of the total market value of the Account at the time of such substitution; and provided further, that the total market value of such other securities subsequently decrease, from time to time, then additional cash or securities qualified for investment hereunder shall promptly be added to the Account, in an amount equal to the amount of the decreased value.

2.2 The total amount of funds paid by Bank pursuant to paragraphs 2.1(a) and (d) of this section shall not exceed either the total cost of the air transportation or 80 percent of the total deposits received by Bank less any refunds made to Participants under paragraphs 2.1(b) and (c) of this section, whichever is greater.

---

[1] If the carrier meets DOT's requirements for protection of customer's deposits by establishing an escrow account, all payments to Carrier shall be made payable to the bank which acts as depository for the escrow. Bank shall make payments for the subject charter program to: _____
[2] In the case of a split charter, payment must be made no later than 10 days prior to the scheduled date of departure.

Revised 11/06

EXHIBIT B

3

2.3 Except as provided in Section 2.1, Bank shall not pay out any funds from the Account prior to two banking days after completion of the Charter Flight, when the balance in the Account shall be paid to Charterer, upon certification of the completion date by Carrier. Such certification shall be made in the form attached hereto as Schedule B. Provided, however, that if the charter involves air transportation only and the Bank has paid the Carrier the charter price for the originating and returning flights and has paid all refunds due to Participants pursuant to paragraph 2.1(b) of this section, then the Bank shall pay the balance in the Account to the Charterer upon certification by the Carrier performing the originating flight that such flight has in fact departed.

2.4 If the Charter Flight is canceled after Carrier has been paid pursuant to paragraph 2.1(a), Carrier or its depository bank (per paragraph 2.1(a)) shall refund to Bank all moneys received for this Charter Flight within five business days after cancellation; provided, however, that in the event the Charter Flight is part of a split charter canceled by the Charterer within 10 days of the scheduled departure, the carrier shall retain all moneys received pursuant to DOT's Economic Regulations, in which event the Charterer shall promptly deposit sufficient funds in the Account to make full refunds to all participants.

2.5 Bank shall not make any disbursements of moneys in the Account except in accordance with the provisions of this section and Part 380.

### Section 3: Indemnification

3.1 Charterer hereby agrees to assume liability for, and does hereby indemnify, protect, save, and keep harmless Bank and Carrier and their respective successors, agents, and servants from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions, suits, costs, or expenses of any kind which may be imposed on, incurred by, or asserted against Bank or Carrier in any way relating to, or arising out of, this Agreement or the enforcement of any of the terms hereof by any persons not party hereto, except only in the case of negligence, whether of omission or commission, by Bank and the Carrier in performance if their respective duties or obligations hereunder.

### Section 4: Amendment and Termination

4.1 No term or provision of this Agreement may be changed, waived, discharged, or terminated except by written amendment signed by Bank, Carrier, and Charterer.

4.2 Any party hereto may at any time terminate this Agreement by mailing a notice of its intent to terminate by registered mail to each of the other parties hereto and DOT. Termination shall not become effective until accepted by DOT.

4.3 This agreement shall commence on the date hereof and shall remain in effect, unless sooner terminated, until all Charter Flights provided for in this Agreement are completed or canceled and all moneys relating thereto have been paid in full.

### Section 5: Accounting and Reporting

5.1 Charterer shall furnish Bank with passenger lists, which shall include the names and addresses of, and the amounts paid on behalf of, each Participant for each Charter Flight, and such other reports and information sufficient to permit Bank to maintain a separate accounting for each charter flight.

Revised 11/06

EXHIBIT B

4

## Section 6: Miscellaneous

6.1 Notices relating to this agreement shall be sent to:

*For Charterer:*    Fyre Festival LLC
52 Lispenard St, TH1
New York, NY 10013

*For Carrier:*    Swift Air LLC
Miami Intl Airport
Miami, FL 33152

*For Bank:*    First Western Trust
1900 16th Street
Suite 1200
Denver, CO 80202

and to: Special Authorities Division, X-46
    Office of International Aviation
    U.S. Department of Transportation
    1200 New Jersey Ave., SE, W-86-445
    Washington DC 20590

6.2 This agreement shall be governed by and be construed under the laws of the State of  Colorado  .

Revised 11/06

EXHIBIT B

5

IN WITNESS WHEREOF, the parties hereto have executed this Agreement by their officers thereunto duly authorized as of the date first above written.

[CHARTERER]
By: _William Z. McFarland_ (signature)
[name] William McFarland
[title] CEO, Fyre Festival LLC
Date: 04 / 24 / 2017

[CARRIER]
By: _(signature)_
[name] JOE LAZAGA
[title] VP LATIN AMERICA + CARIBBEAN
Date: 4-24-17

[BANK]
By: _(signature)_
[name] Fabian Duran
[title] Vice-President
Date: 4/25/17

## SCHEDULE A

### CARRIER WIRE TRANSFER INSTRUCTIONS

Check one of the following two boxes and insert wire transfer instructions:

[✓] Carrier is required to establish an escrow account. Wire transfer payments to:

Bank _____

ABA Routing Number _____
for the escrow account of Carrier

Escrow Account Number _____

[ ] Carrier is not required to deposit payments into escrow. Wire transfer payments to:

Bank _____

ABA Routing Number _____
for the operating account of Carrier

Account Number _____

CARRIER:   Signature: _____

Print name: _JOE LAZABA_____

Title: _VP LATIN AMERICA & CARIBBEAN_

EXHIBIT B

## SCHEDULE B

## CERTIFICATE OF CARRIER

I, the undersigned designee of ___Swift Air, LLC___
[Carrier]

do hereby certify that the following Charter Flights were completed on the following dates:

| FLIGHT NUMBER | DATE OF COMPLETION OF INBOUND (RETURNING) LEG OF FLIGHT |
|---|---|

**CARRIER:**

Signature: _____

Print name: __Joe Lazaga__

Title: __VP Latin America & Caribbean__

EXHIBIT B

OMB No. 2106-0078
Expires 06/30/2019

**PAPERWORK REDUCTION Act Statement**

A federal agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that Control Number for this information collection is 2106-0005. Public reporting for this collection of information is estimated to be approximately 30 minutes per response, including the time for reviewing instructions, completing and reviewing the collection of information. All responses to this collection of information are voluntary. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, U.S. Department of Transportation, Office of International Aviation, X-45, 1200 New Jersey Avenue SE, Suite W-86-446, Washington, DC 20590.

## STATEMENT OF CHARTER OPERATOR OR DIRECT AIR CARRIER, AND SECURER

U.S. Department of Transportation
Office of the Secretary of Transportation

INSTRUCTIONS: Date of filing for purposes of DOT regulations is the date properly completed forms are received by DOT.

We __FYRE FESTIVAL, LLC__
(Charter Operator or Direct Air Carrier)

and ~~Shelby Financial~~ FIRST WESTERN TRUST
(Securer)

certify that we have entered into a security agreement number __1861__, in the
(Security Agreement Number)

amount of $ __900,000__ on __4/20/17__. This agreement covers proposed flight schedule
(Amount) (Date)

number __A-001__, a copy of which has been received by __FIRST WESTERN TRUST__
(Securer)

This agreement complies with (§380.34) (§380.34a) of DOT's Regulations (14 CFR §380.34 or §380.34a).

This agreement is a (Check one):
☐ Surety Bond
☑ Surety Trust Agreement
☐ Letter of Credit (for participants of flight schedule number _____)

Check one of the following:
☐ This agreement is in an unlimited amount.
☑ There are no outstanding claims against this agreement.
☐ There are outstanding claims against this agreement in the amount of $_____. We have executed a rider to the agreement on _____, increasing the coverage by this amount.*
(Date)

*In place of this sentence, the following statement may be used: "_____ will separately pay any claims for (Securer) which it may be liable without impairing the security agreement or reducing the amount of coverage."

| CHARTER OPERATOR or DIRECT AIR CARRIER | SECURER |
|---|---|
| BY: _William E. McFarland_ (Signature) | BY: _[signature]_ (Signature) |
| William McFarland (Name in print) | Fabian Dufan (Name in print) |
| CEO, Fyre Festival LLC (Title) | Vice-President (Title) |
| 973-868-6277 (Phone Number) _____ (Fax Number) | 303-640-4040 (Phone Number), 303-640-4057 (Fax Number) |
| 52 Lispenard St, TH1 (Street, Box Number) | 1900 16th St Suite 500 (Street, Box Number) |
| New York, NY 10013 (City, State, Zip Code) | Denver CO 80202 (City, State, Zip Code) |
| 4/20/17 (Date)** | 4/26/17 (Date)** |

**This document is not acceptable if not dated.

OST Form 4533

OST 4533, 12-13 Form Prev

EXHIBIT B

## PUBLIC CHARTER OPERATOR'S SURETY TRUST AGREEMENT

This Trust Agreement is entered into between __Fyre Festival LLC__ (charter operator) incorporated under the laws of __Delaware__ with its principal place of business being __New York__ (hereinafter called "Operator"), and __First Western Trust__ (Bank) with its principal place of business being __~~USA 62~~ USP(NKR), NY, NY 10013__ (hereinafter called "Trustee"), for the purpose of creating a trust to become effective as of the __~~8th~~ 20th__ day of __April__, 20_17_, which trust shall continue until terminated as hereinafter provided.

Operator intends to become a Public Charter operator pursuant to the provisions of Part 380 of the Department's Special Regulations and other rules and regulations of the Department relating to insurance or other security for the protection of charter participants, and has elected to file with the Department of Transportation such a Surety Trust Agreement as will insure financial responsibility with respect to all monies received from charter participants for services in connection with a Public Charter to be operated subject to Part 380 of the Department's Special Regulations in accordance with contracts, agreements, or arrangements therefore.

This Surety Trust Agreement is written to assure compliance by Operator with the provisions of Part 380 of the Department's Special Regulations and other rules and regulations of the Department relating to insurance or other security for the protection of charter participants. It shall inure to the benefit of any and all charter participants to whom Operator may be held legally liable for any of the damages herein described.

It is mutually agreed by and between Operator and Trustee that Trustee shall manage the corpus of the trust and carry out the purposes of the trust as hereinafter set forth during the term of the trust for the benefit of charter participants (who are hereinafter referred to as "Beneficiaries.")

Beneficiaries of the trust created by this Agreement shall be limited to those charter participants who meet the following requirements:

1. Those for whom Operator or Operator's agent has received payment toward participation in one or more charters operated by or proposed to be operated by Operator.
2. Who have legal claim or claims for money damages against Operator by reason of Operator's failure faithfully to perform, fulfill, and carry out all contracts, agreements, and arrangements made by Operator while this trust is in effect with respect to the receipt of monies and proper disbursement thereof pursuant to Part 380 of the Department's Special Regulations; and
3. Who have given notice of such claim or claims in accordance with this Trust Agreement, but who have not been paid by Operator.

The Operator shall convey to Trustee legal title to the trust corpus, which has a value of $ __900,000__ by the time of the execution of this Agreement.

Trustee shall assume the responsibilities of Trustee over the said trust corpus and

Agreement# 1861

, effective 4/20/2017

Revised 8/2014

SURETY'S CORPORATE SEAL

EXHIBIT B

Part 380 Surety Trust Agreement, page 2.

shall distribute from the trust corpus to any and all Beneficiaries to whom Operator, in its capacity as a Public Charter operator, may be held legally liable by reason of Operator's failure faithfully to perform, fulfill, and carry out all contracts, agreements, and arrangements made by Operator, while this trust is in effect with respect to the receipt of monies and proper disbursement thereof pursuant to Part 380 of the Department's Special Regulations in connection with said charters, such damages as will discharge such liability while this trust is in effect; *Provided, however,* that the liability of the trust to any Beneficiary shall not exceed the charter price (as defined in Part 380 of the Department's Special Regulations) paid by or on behalf of any such Beneficiary; *Provided, further,* that there shall be no obligation of the trust to any Beneficiary if Operator shall pay or cause to be paid to any Beneficiary any sum or sums for which Operator may be held legally liable by reasons of its failure faithfully to perform, fulfill, and carry out all contracts, agreements, and arrangements made by Operator in its capacity as Public Charter Operator while this trust is in effect with respect to the receipt of monies and proper disbursement thereof pursuant to Part 380 of the Department's Special Regulations; *and provided still further,* that the liability of the trust as administered by Trustee shall not be discharged by any payment or succession of payments hereunder, unless and until such payment or payments, shall amount in the aggregate to $ 200,000 . Notwithstanding anything herein to the contrary, in no event shall the obligation of the trust or Trustee hereunder exceed the aggregate amount of $ 200,000 .

Trustee agrees to furnish written notice to the Special Authorities Division, X-46, Department of Transportation, forthwith of all suits or claims filed and judgments rendered (of which it has knowledge); and of payments made by Trustee under the terms of this trust.

The trust shall not be liable hereunder for the payment of any damages hereinbefore described which arise as a result of any contracts, agreements, undertakings, or arrangements for the supplying of transportation and other services made by Operator after the termination of this trust as herein provided, but such termination shall not affect the liability of the trust hereunder for the payment of any damages arising as a result of contracts, agreements, or arrangements for the supplying of transportation and other services made by Operator prior to the date that such termination becomes effective.

Liability of the trust shall in all events be limited only to a Beneficiary or Beneficiaries who shall within sixty days after the termination of the particular charter give written notice of claim to Operator or, if it is unavailable, to Trustee, and all liability of the trust with respect to participants in a charter shall automatically terminate sixty days after the termination date of each particular charter covered by this trust except for claims made in the time provided herein. Sixty-one days after the completion of the last charter covered by this Trust Agreement, the trust shall automatically terminate except for claims of any Beneficiary or Beneficiaries previously made in accordance with this Agreement still pending on and after said sixty-first day. To the extent of such claims, the trust shall continue until those claims are discharged, dismissed, dropped, or otherwise terminated. After all remaining claims which are covered by this Trust Agreement pending on and after the said sixty-first day have been discharged, dismissed, dropped, or otherwise terminated; Trustee shall convey forthwith the remainder of the trust corpus, if any, to Operator.

Agreement# 1841 , effective 4/20/2017

SURETY'S CORPORATE SEAL

Revised 8/2014

EXHIBIT B

Part 380 Surety Trust Agreement, page 3.

Either Operator or Trustee may at any time terminate this trust by written notice to: "Special Authorities Division, X-46, Office of International Aviation, U.S. Department of Transportation, 1200 New Jersey Avenue SE, W-86-445, Washington, DC 20590," such termination to become effective thirty days after the actual receipt of said notice by the Department.

In the event of any controversy or claim arising hereunder, Trustee shall not be required to determine same or take any other action with respect thereto, but may await the settlement of such controversy or claim by final appropriate legal proceedings, and in such event shall not be liable for interest or damages of any kind.

Any Successor to Trustee by merger, consolidation, or otherwise, shall succeed to this trusteeship and shall have the powers and obligations set forth in this Agreement.

The trust created under this Agreement shall be operated and administered under the laws of the State of COLORADO.

IN WITNESS WHEREOF, Operator and Trustee have executed this instrument on the date(s) shown below.

Operator _William E. McFarland_ (signature)
Date 4/20/17
Name William McFarland (typed or printed)
Title CEO, Fyre Festival LLC

Trustee _[signature]_ (signature)
Date 4/06/17
Name Fabian Duran (typed or printed)
Title Vice-President

Agreement# 1861 , effective 4/10/2017  SURETY'S CORPORATE SEAL

Revised 8/2014

EXHIBIT B
EXHIBIT B