# EXHIBIT C



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

86 Chambers Street
New York, New York 10007

June 19, 2018

### BY FIRST CLASS MAIL AND ELECTRONIC MAIL

David J. Valpredo
President
Shelby Financial Corporation
48639 Hayes, Suite 1
Shelby Twp., MI 48315
david.valpredo@shelbyfinancialcorp.com

*Re: In re Fyre Festival LLC*, No. 17-bk-11883 (MG)

Dear David:

As you know, this Office represents the United States of America, on behalf of the United States Department of Transportation ("DOT"), in the above-referenced Chapter 7 proceeding. I write to summarize the Government's position that we discussed in late May regarding the funds in a surety trust account (the "Account") held at First Western Trust Bank (the "Bank") pursuant to a surety trust agreement effective April 20, 2017, for which the Bank is trustee. We understand that Shelby Financial Corporation is a third-party administrator for the Bank with respect to the Account. We also understand that the Chapter 7 Trustee in the above-referenced bankruptcy proceeding has demanded turnover of the funds held in trust in the Account.

First, we informed you that, in DOT's view, the funds in the Account remain property of the trust and thus are not subject to turnover to the Chapter 7 Trustee. *See, e.g.*, *In re Ocana*, 151 B.R. 670, 673 (Bankr. S.D.N.Y. 1993) ("Upon the establishment of the trust, the property ceased to belong to the debtor; the establishment of the trust put the property beyond the reach of the settlor-debtor's bankruptcy court."); *id.* (noting that the debtor's "only interest in the trust property is reversionary," and only the reversionary interest is subject to control by the bankruptcy court); *see also In re Anthony Sicari Inc.*, 144 B.R. 656, 662 (Bankr. S.D.N.Y. 1992) (money held in escrow is not property which vests in the trustee in bankruptcy).

The debtor, Fyre Festival LLC ("Fyre"), is an indirect air carrier known as a public charter operator governed by DOT regulations set forth in 14 C.F.R. Part 380. To obtain authorization to operate as a public charter operator, Debtor was required to submit a public charter prospectus to DOT as described in 14 C.F.R. § 380.28. DOT's comprehensive regulatory scheme protects the payments made by public charter participants by requiring that the public charter prospectus include, among other options, a security agreement in the form of a surety trust agreement in an amount of up to $200,000. 14 C.F.R. §§ 380.34(b)(1), (c)(2)(ii). The security agreement is intended to "insure the financial responsibility of the [public] charter operator ... and the supplying of the transportation and all other accommodations, services, and facilities in accordance

**EXHIBIT C**

David J. Valpredo
Page 2

with the contract[s] between the [public] charter operator ... and the charter participants." 14 C.F.R. § 380.34(c)(1). In addition, any contract between a public charter operator and charter participants must state, among other things, "[t]he name and address of the surety company or bank issuing the security agreement; and that unless the charter participant files a claim with the charter operator or, if he is unavailable, with the securer, within 60 days after termination of the charter, the securer shall be released from all liability under the security agreement to that participant." 14 C.F.R § 380.32(v). This notice requirement ensures that public charter participants are made aware of the required security agreement.

The Account was set up pursuant to Fyre's regulatory obligations as a public charter operator under 14 C.F.R. Part 380. In addition, the Bank was a signatory to Fyre's underlying public charter prospectus, in which the Bank expressly agreed to comply with all parts of 14 C.F.R. Part 380. Thus, DOT's regulatory scheme required Fyre to enter into the surety trust agreement to protect individual charter participants, who are the beneficiaries of the trust. *See* 14 C.F.R. § 380.34. The regulatory scheme also required that Fyre's charter participants be given (A) notice of the name and address of the Bank, which is administering the surety trust, and (B) notice that unless a charter participant files a claim with the charter operator or, if it is unavailable, with the Bank, within 60 days after termination of the charter, the Bank shall be released from all liability under the security agreement to that participant. 14 C.F.R. § 380.32(v).

DOT has reason to believe that the required notices were not provided to charter participants because it appears that Fyre sold tickets as early as February 2017, but the surety trust agreement was not entered into until late April 2017, days before the first flights were scheduled to take off. Accordingly, DOT's position is that the trust has not terminated even though more than 60 days have passed since the termination of the charter to the extent that beneficiaries were not informed of the trust's existence and given the required notices. Moreover, even though DOT understands that the Bank has not received any complaints from charter participants, participants may have submitted complaints directly to Fyre, and these participants may be entitled to reimbursement under the surety trust. Thus, given the probable lack of notice and the possibility of unresolved claims already made to Fyre, DOT believes that terminating the trust at this point would be premature and may deprive participants of their right to reimbursement from the trust.

Second, we reiterated to you that, although DOT's position is that the funds remain in trust and are not subject to turnover to the Chapter 7 Trustee for the reasons set forth above, DOT is not a party to the trust agreement and this Office is not the attorney for any party to the trust agreement. As such, while the Government has a regulatory interest in this matter and has expressed its views regarding the ongoing existence of the trust, the Government is not directing that the Bank take any particular action with respect to the funds. Instead, as we discussed, we wish to ascertain from the Bank's legal counsel whether the Bank believes the funds remain in trust. If the Bank ultimately disagrees with DOT's position and plans to turn the funds over to the Chapter 7 Trustee, DOT will evaluate its next steps and take appropriate action to protect its regulatory interests.

EXHIBIT C

David J. Valpredo
Page 3

    We intend to reiterate the above points directly to both the Bank once we are provided with the name of their legal counsel, and to counsel for the Chapter 7 Trustee. Thank you for your assistance with this matter.

                                      Very truly yours,

                                      GEOFFREY S. BERMAN
                                      United States Attorney for the
                                      Southern District of New York

By: _____
      ANTHONY J. SUN
      Assistant United States Attorney
      86 Chambers St., 3rd Floor
      New York, New York 10007
      (212) 637-2810

**EXHIBIT C**