# HANTMAN & ASSOCIATES
ATTORNEYS AT LAW
1120 Avenue of the Americas
4th Floor
New York, New York 10036
(P) 212-684-3933
(F) 212-465-2192
www.Hantmanlaw.com

**ROBERT J. HANTMAN**
rhantman@hantmanlaw.com
New York, New Jersey, & Florida Bars

April 24, 2020

**VIA ELECTRONIC FILING AND FAX**
The Hon. Naomi Reice Buchwald
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007

**RE: Inmate William McFarland, United States Marshal #91186-054;
Index #: 1:17-cr-00600-NRB-1; Request for Compassionate Release**

Dear Judge Buchwald;

As you are aware from our filings on April 14 and 16, 2020, our firm represents, William McFarland, on his request for compassionate release, pursuant to 18 U.S.C. § 3582(c), 28 C.F.R. § 571.61, The Cares Act Section 12003(b)(2), and the recent directives of Attorney General William Barr to the Federal Bureau of Prisons ("BOP") in carrying out these provisions to combat the spread and effects of Covid-19.

We submit this letter to bring to your Honor's attention some recent developments which may have a substantial impact on your decision.

Firstly, two days ago, on April 22, 2020, Judge James S. Gwin, of the United States District Court for the Northern District of Ohio issued an order granting partial relief in a class action law-suit filed by the American Civil Liberties Union of Ohio on behalf of all inmates current and future at Elkton.[1] (That opinion is attached hereto for your convenience as Exhibit 1).

In his opinion Judge Gwin defined a subclass including, "[a]ll Elkton inmates who are over 65 years or older _**and**_ those with documented, pre-existing conditions, including heart, lung, kidney, and liver conditions, diabetes, conditions causing a persons to be immunocompromised…, and severe obesity."[2]

Judge Gwin then ordered the respondents, Mark Williams - the warden of Elkton, and Michael Carvajal - the Director of the United States Bureau of Prisons, to "identify, within one

---

[1] Wilson v. Williams, No. 4:20-cv-00794-JG Doc. # 22, (N.D. Ohio Apr. 22, 2020)
[2] _Id._ at 12 (emphasis added)

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

(1) day all members of the subclass as defined in [the] Order."[3] And, "[f]ollowing identification, the Court order[ed] Respondents to evaluate each subclass member's eligibility for transfer out of Elkton through any means, …."[4]

Our firm has been in contact with Mr. McFarland today, two days after this order was issued and he has informed us that, to his knowledge, the staff at Elkton has not begun to select inmates who fall within the subclass defined by Judge Gwin. Instead the staff at Elkton has begun telling the inmates to file a petition with their sentencing judges bringing to their attention Judge Gwin's decision. Our client does fit within the subcategory, as he has documented preexisting conditions of the type described by Judge Gwin, which are explained in further detail in our April 14th filing. And as such we are following the advice of the Elkton staff and bringing this matter to your Honors attention.

Secondly, in an order dated April 21, 2020 Judge Ronnie Abrams of the United States District Court for Southern District of New York ordered the Government to provide an explanation to the Court by way of an affidavit by a relevant authority at the BOP as to how the remaining length of an inmates sentence is to affect the decision to grant or deny compassionate release, as that had been the subject of some contradiction.[5] After seeking a brief extension, the government clarified, just yesterday, via a declaration by Jennifer A Broton – the Associate Warden at the facility where the petitioner in that case was serving his sentence, that, although "these priority factors are subject to deviation in BOP's discretion… and are subject to revision…"[6] the "BOP is at this time prioritizing for consideration inmates who either 1) have served 50% or more of their sentences, or 2) have 18 month or less remaining in their sentences and have served 25% or more of their sentences."[7] (This letter and Declaration attached hereto as Exhibit 2)

Ms. Broton went on to explain that, "[i]f the incarcerated individual does not qualify for home confinement under the BOP criteria, an inmate may be reviewed for placement in a Residential Reentry Center and home confinement at a later stage…."[8]

However, notwithstanding this statement of priority, the government went on to summarily authorize the petition for compassionate release of the petitioner in that case although he had not met the foregoing criteria.[9] Indeed the petitioner in that case, Mr. Stahl, has only served just under 13 months out of his total sentence of 30 months, or about 43 percent of his sentence.[10]

---

[3] Wilson v. Williams, No. 4:20-cv-00794-JG Doc. # 22, at 20, (N.D. Ohio Apr. 22, 2020)

[4] Id.

[5] United States v. Lewis Stahl, No. 1:18-cr-00694-RA Doc. # 60, (S.D.N.Y Apr. 21, 2020).

[6] United States v. Lewis Stahl, No. 1:18-cr-00694-RA Doc. # 65-1, at 8 (S.D.N.Y Apr. 21, 2020).

[7] Id.

[8] Id.

[9] Id. at 10

[10] United States v. Lewis Stahl, No. 1:18-cr-00694-RA Doc. # 19, at 8 (S.D.N.Y Mar. 26, 2019).

2

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

In the case at bar, Mr. McFarland, having his sentence imposed on October 11, 2018, has served 18 months and 14 days of his 72-month sentence. Taking into account that Mr. McFarland has previously been informed that he is eligible for the RDAP program, as explained in further in our April 14th filing, which takes one year off of the sentence and provides and additional 1 year of home confinement, Mr. McFarland has served approximately 30% of his sentence to date. Further, as previously mentioned, Mr. McFarland has pre-existing health conditions which weigh in favor of releasing him to home confinement, which Mr. Stahl had none of.

Finally, as iterated in our filing on April 14, 2020, Mr. McFarland seeks not to avoid his sentencing through this petition, but simply to maintain his health, and therefore has given us the authority to negotiate further conditions with the Government, such as increasing his currently required supervised release from three to five years, and increasing his rate of financial restitution.

Respectfully submitted
/s/ Robert J Hantman_____
Robert J Hantman

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Exhibit 1

FLORIDA                         NEW JERSEY                      FLORIDA
HANTMAN & ASSOCIATES            JOSEPH J. FERRARA               ENTIN & DELLA FERA, P.A.
650 WEST AVENUE                 OF COUNSEL                      OF COUNSEL
SUITE 2408                      111 PATERSON AVENUE             110 SE 6TH ST., SUITE 1970
MIAMI BEACH, FL 33139           HOBOKEN, NJ 07030               FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

|  |  |  |
|---|---|---|
| | : | |
| CRAIG WILSON, *et al.,* | : | CASE NO. 4:20-cv-00794 |
| | : | |
| Petitioners, | : | ORDER |
| | : | [Resolving Doc. 1] |
| vs. | : | |
| | : | |
| MARK WILLIAMS, *et al.,* | : | |
| | : | |
| Respondents. | : | |
| | : | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

On April 13, 2020, Petitioners, inmates at Elkton Federal Correctional Institution, brought this emergency habeas action seeking release from Elkton due to the spread of COVID-19 within the prison.[1]  Petitioners claim to represent both a class of all Elkton inmates as well as a subclass of medically vulnerable inmates.[2]  Respondents opposed.[3]

On April 17, 2020 the Court held a hearing on the matter.  On April 18, 2020, both parties filed additional materials in response to the Court's hearing inquiries.[4]

For the foregoing reasons, the Petitioners' motion for relief is **GRANTED IN PART** and **DENIED IN PART**.

I.    COVID-19 at Elkton

State government and the media have well documented the spread of COVID-19 and the efforts to contain the virus and limit its impact.  The virus's highly-infectious nature and the risks it poses, especially to medically vulnerable populations, has led to the

---

[1] Doc. 1.
[2] *Id.*
[3] Doc. 10.
[4] Docs. 18, 19.

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

implementation of unprecedented measures throughout the country and the world.

While research concerning the virus is ongoing, for some time health officials have known and reported that asymptomatic persons spread the virus.[5]  A large percentage of coronavirus-infected citizens are asymptomatic.[6]  These asymptomatic persons show no, or limited,  symptoms.  Yet, they spread the virus.

Due to this threat from infected but asymptomatic individuals, testing, tracing and treatment became the first mitigation responsibilities.  As the virus has become more widespread, state government has directed citizens to reduce the spread not only through careful hygiene practices, but also through social distancing and isolation.

For inmates in our country's prisons the virus is no less a threat, but distancing measures are only minimally available.

Defendants Elkton officials have implemented measures to lessen the COVID-19 threat.  Elkton segregates new inmates for fourteen days.[7]  Elkton officials evaluate existing inmates with virus symptoms to determine whether isolation or testing is appropriate.[8]  They check inmate and staff temperatures.[9]  Elkton officials segregate inmates for fourteen days before allowing the inmates to leave Elkton.[10]

But despite their efforts, the Elkton officials fight a losing battle.  A losing battle for

---

[5] CDC, *Coronavirus Disease 2019: Recommendations for Cloth Face Covers*, https://www.cdc.gov/coronavirus/2019-ncov/prevent-getting-sick/cloth-face-cover.html (last visited Apr. 20, 2020) (citing Yan Bai, Lingsheng Yao, and Tao Wei, *et al., Presumed Asymptomatic Carrier Transmission of COVID-19*, JAMA (Feb. 21, 2020), https://jamanetwork.com/journals/jama/fullarticle/2762028).
[6] Apoorva Mandavilli, *Infected but Feeling Fine: The Unwitting Coronavirus Spreaders*, N.Y. TIMES (Mar. 31, 2020), https://www.nytimes.com/2020/03/31/health/coronavirus-asymptomatic-transmission.html.
[7] Doc. 10 at 8.
[8] *Id.* at 9.
[9] *Id.* at 9-10.
[10] *Id.* at 27.

-2-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

staff.  A losing battle for inmates.

The parties to the present action dispute some of the factual details of the current

conditions within Elkton.  Even in light of these disputes, the prison's "dorm-style" design

guarantees that inmates remain in close proximity to one another.[11]  With the shockingly

limited available testing and the inability to distance inmates, COVID-19 is going to

continue to spread, not only among the inmate population, but also among the staff.

According to Respondents, Elkton has had 59 confirmed cases of COVID-19 among

inmates.[12]  The number of infected staff members, 46, is almost as high.[13]  The number has

risen even in the days since the initiation of this lawsuit and will continue to do so absent

intervention.

Notably, it is unlikely that these figures represent the actual number of cases at the

institution, given the paltry number of tests the federal government has made available for

the testing of Elkton's inmates.

To date, Elkton has received only 50 COVID-19 swab tests and one Abbott Rapid

testing machine with 25 rapid tests.[14]  Most swab tests have already been used.  Because

the Department of Justice has given BOP so few tests, Elkton medical staff has needed to

triage test usage.

Respondents represent that "test swabs are back-ordered until July or August," but

---

[11] Doc. 10 at 7.
[12] Doc. 19 at 2.
[13] The official numbers on the Bureau of Prison's website conflict with the numbers reported by Respondents.  The BOP's website reports 52 confirmed cases among inmates, 46 cases among staff.  Contrarily, Respondents report 59 cases among inmates and 34 among staff.  *Compare* Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited April 22, 2020), *with* Docs. 10 at 10, 19 at 2.
[14] Doc. 19 at 1-2.

-3-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

they "believe that they will receive an additional 25 rapid test[s]" each week.[15]  These

additional tests are all but useless considering Elkton's 2,400 inmates.

Recent experience at another Ohio correctional facility, Marion Correctional

Institution, run by the Ohio Department of Rehabilitation and Corrections, shows how

quickly and insidiously the virus spreads among a tightly quartered prison population.

Both Elkton and Marion are low security prisons and house approximately 2,500

inmates.[16]

The State of Ohio has tested its prisoners en masse for COVID-19.  At Marion 1,950

inmates tested positive for COVID-19.[17]  This number includes large numbers of inmates

who were asymptomatic and would otherwise not have been tested.[18]

Everything suggests that if BOP tested as ODRC commendably has, results would

show that the virus has become equally widespread within Elkton.  However, without

testing there is no way to know how many Elkton inmates have the virus.

The Ohio prisons virus response undercuts BOP's ability to argue that testing is

either unavailable or is impossible.  Why has the Justice Department allocated Elkton an

entirely insignificant number of tests while Ohio has been able to pull off mass testing

across not only Marion, but at multiple institutions?

While the COVID-19 tests inadequacy is one area of grave concern, testing is only

one part of the multi-faceted approach institutions like Elkton must take to reduce the

---

[15] *Id.*

[16] Ohio Department of Rehabilitation & Correction, *Marion Correctional Institution*, https://drc.ohio.gov/mci (last visited Apr. 22, 2020).

[17] Ohio Department of Rehabilitation & Correction, *COVID-19 Inmate Testing Updated 4/20/2020*, https://drc.ohio.gov/Portals/0/DRC%20COVID-19%20Information%2004-20-2020%20%201304.pdf (last visited Apr. 20, 2020).

[18] *Id.*

-4-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

virus's spread.

Respondents report that the prison, in accordance with BOP guidance, has changed its operations to try to limit the virus's spread.[19]  For instance, the prison has implemented health screening measures for various groups of inmates, staff, and civilians.[20]  These are all good efforts.

However, once the virus is inside the prison, as it already is at Elkton, screening measures can only be so effective.  And screening will only help to identify individuals with active symptoms, not those asymptomatic individuals who can nevertheless spread the virus undetected.

Respondents have also implemented "modified operations" to somewhat reduce inmate contact with each other.  Elkton allows inmate housing units of 150 to pick up pre-packaged meals, receive dispensed medications, and visit the commissary with only a single housing unit moving around the institution at one time.[21]  Better practices, but not enough.

Respondents attempt to liken each housing unit to a "family unit."  They say that each unit is akin to unincarcerated community members who live with roommates or family.[22]  They say that each housing unit is separate from other units, visitors, and sick inmates.[23]

But each single housing unit includes about 150 people.[24]  Respondents ignore that

---

[19] Doc. 10 at 7-11.
[20] *Id.* at 8-9.
[21] Doc. 10 at 21.
[22] *Id.* at 21-22.
[23] *Id.*
[24] *Id.*

-5-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

some unit inmates nonetheless circulate throughout the prison as "essential" workers.

Because some untested inmates circulate throughout Elkton, the housing units are not truly

isolated.  And with 150 "family members," there are significant opportunities to increase

the risk of spread.  Within each housing unit there seems to be little chance of obstructing

the spread of the virus.

      Respondents say that soap and disinfectant are readily available, a fact that

Petitioners dispute.[25]  However, these supplies can only be so useful in an environment

where the inmates are constantly in close proximity to one another.  Likewise, the

education about hygiene and social distancing Respondents tout is only effective if the

inmates have the supplies and physical space to put such knowledge into practice.[26]

      Furthermore, while the deteriorating health conditions at Elkton pose a danger for

each of the 2,400 men who are incarcerated at Elkton, the institution's inability to stop the

spread of the virus among the inmates in its care poses an even greater risk for inmates

whose medical conditions put them at higher risk of death if they contract the virus.[27]

      Plus, while this litigation concerns Elkton's conditions for its inmates, the same

conditions endanger prison staff, who must continue to go to work despite the virus's

spread throughout the facility.  And the Elkton spread endangers the staff's families who

come into contact with Elkton's undoubtedly exposed staff.

      In light of these realities, Petitioners, inmates at Elkton, bring the present action.

They sue on behalf of themselves and on behalf a class of all current and future Elkton

---

[25] *Compare* Doc. 10 at 27, *with* Doc. 1 at 17.
[26] Doc. 10 at 11-12.
[27] *See generally* Briefs for Disability Rights Ohio *and* Public Health and Human Rights Experts as Amici Curiae Supporting Petitioners, Docs. 8-1 and 14-1.

-6-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

inmates.[28]

They bring additional claims on behalf of the "Medically-Vulnerable Subclass," defined as:

> [A]ll current and future persons incarcerated at Elkton over the age of 50, as well as all current and future persons incarcerated at Elkton of any age who experience: chronic lung disease or moderate to severe asthma; serious heart conditions; conditions that can cause a person to be immunocompromised, including cancer treatment, smoking, bone marrow or organ transplantation, immune deficiencies, poorly controlled HIV or AIDS or prolonged use of corticosteroids and other immune weakening medications; severe obesity (defined as a body mass index of 40 or higher); diabetes; chronic kidney disease or undergoing dialysis; or liver disease.[29]

Petitioners seek certification of the classes.  In addition, they request:

> a temporary restraining order, preliminary injunction, permanent injunction, and/or writ of habeas corpus requiring Respondents to identify within six (6) hours of the Court's order, and submit to the Court a list of, all Medically-Vulnerable Subclass Members, and release all such persons within twenty-four (24) hours, with such release to include supports to ensure social distancing and other expert-recommended measures to prevent the spread of coronavirus.[30]

Petitioners define release as "discharge of incarcerated persons from the physical confines of Elkton, not necessarily release from custody."[31]  Petitioners suggest that "[r]elease options may include, but are not limited to: release to parole or community supervision; transfer furlough (as to another facility, hospital, or halfway house); or non-transfer furlough, which could entail a release person's eventual return to Elkton once the pandemic is over and the viral health threat abated."[32]

---

[28] Doc. 1 at 29.
[29] *Id.*
[30] Doc. 1 at 36.
[31] *Id.* at 2 n. 2.
[32] *Id.* at 2.

-7-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

In other words, Petitioners seek an "enlargement."  Enlargement is not release, although some courts refer to it using the terms release or bail.[33]  When a court exercises its power to "enlarge" the custody of a defendant pending the outcome of a habeas action, the BOP maintains custody over the defendant, but the place of custody is altered by the court.[34]

After the release of the subclass, Petitioners request "a plan, to be immediately submitted to the Court and overseen by a qualified public health expert" that provides for mitigation efforts in line with CDC guidelines and a housing and/or public support plan for released inmates.[35]  They also seek the release of Class Members so that the remaining inmates can follow CDC guidance to maintain six feet of space between them while in the prison.[36]

Respondents respond that Petitioners cannot challenge the conditions inside the prison through a habeas corpus action and that this Court and the BOP do not have the authority to grant early release.[37]

## II.    Discussion

District courts have inherent authority to grant enlargement to a defendant pending a ruling on the merits of that defendant's habeas petition.[38]  The Court finds that the exceptional circumstances at Elkton and the Petitioners' substantial claims, that are likely to

---

[33] *See* Declaration of Professor Judith Resnik Regarding Provisional Remedies for Detained Individuals at 8, *Money et al. v. Jeffreys*, No. 1:20-cv-02094 (N.D. Ill. April 4, 2020), ECF No. 24-3.
[34] *Id.*
[35] Doc. 1 at 36-37.
[36] *Id.* at 37.
[37] Doc. 10 at 15-19.
[38] *See, e.g., Mapp v. Reno*, 241 F.3d 221, 226 (2d Cir. 2001); *Dotson v. Clark*, 900 F.2d 77, 79 (6th Cir. 1990).

-8-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

succeed at the merits stage, necessitate the exercise of that authority and that such relief is

proper for members of the subclass defined *infra*.[39]

However, given the nature of the present litigation as class action habeas

proceeding, the Court is unable to determine the specific type of enlargement most suitable

for each subclass member.  In light of this difficulty, the Court will grant a preliminary

injunction, in aid of its authority to grant enlargements, ordering Respondents to determine

the appropriate means of transferring medically vulnerable subclass members out of Elkton.

Pursuant to the below analysis, the Court finds that Petitioners have met the standard for a

preliminary injunction.

### A. Jurisdiction

Petitioners argue that Elkton's inability, even if it tried, to adequately protect the

inmates from the risks posed by coronavirus subjects the prisoners to substantial risk of

harm in violation of their Eighth Amendment rights.  Petitioners say that their claim is

cognizable under 28 U.S.C. § 2241 as a habeas action because they are challenging the

execution of their sentences, rather than the validity of the convictions themselves.[40]

Petitioners argue that they are not seeking to challenge a specific aspect of their

confinement, but the confinement itself.[41]

Respondents argue that habeas relief is not the proper vehicle to challenge

conditions of confinement.[42]

Courts have attempted to clarify the types of claims appropriate for habeas relief and

---

[39] *Dotson*, 900 F.2d at 79.
[40] Doc. 1 at 34-35.
[41] Doc. 18 at 8-9.
[42] Doc. 10 at 15-16.

-9-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

distinguish those claims from civil rights claims more appropriately resolved under § 1983.

The general result has been that challenges to the fact or duration of confinement that seek

release sound in habeas whereas actions challenging the conditions of confinement raise

concerns properly addressed under § 1983.[43]

But, these seemingly bright line rules are difficult to apply in practice. The near

impossibility in some cases of drawing such distinctions has become even more obvious

with COVID-19. Whereas many medical needs claims might appropriately be addressed

through § 1983 litigation, claims concerning COVID-19 are not so easily classified as §

1983 claims.

Inmates challenging BOP's COVID-19 response challenge the dangerous conditions

within the prison created by the virus. However, the only truly effective remedy to stop the

spread is to separate individuals—a measure that in our nation's densely populated prisons

is typically impossible without the release of a portion of the population. So, such actions

ultimately seek to challenge the fact or duration of confinement as well.[44]

In this case, the Petitioners frame their action as a § 2241 habeas claim.[45] The Sixth

Circuit, echoing the distinctions recognized by other courts, has found that "§ 2241 is not

---

[43] *See Muhammad v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus . . . requests for relief turning on circumstances of confinement may be presented in a § 1983 action."); *Heck v. Humphrey*, 512 U.S. 477 (1994); *Preiser v. Rodriguez*, 411 U.S. 475 (1978).

[44] *Mays v. Dart*, No. 20 C 2134, 2020 WL 1812381, at *6 (N.D. Ill. Apr. 9, 2020). Two federal district courts have noted without deciding that claims such as those brought by Petitioners might be cognizable as habeas claims because the relief sought would affect the duration of confinement or because the conditions complained of could not be eliminated without releasing the inmates from detention. *See A.S.M. v. Donahue*, No. 7:20-CV-62, 2020 WL 1847158, at *1 (M.D. Ga. Apr. 10, 2020); *Mays*, 2020 WL 1812381 at *6.

[45] Whereas other petitioners bringing COVID-19-related challenges have pleaded both habeas and § 1983 claims in the alternative, Petitioners do not do so here.

-10-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

the proper vehicle for a prisoner to challenge conditions of confinement."[46]  However, the

Sixth Circuit has also held "§ 2241 is appropriate for claims challenging the execution or

manner in which the sentence is served."[47]

Petitioners' action evades easy classification.  Part of the difficulty rests in

Petitioners' differing relief requests for the class and subclass.  For the significantly

vulnerable subclass the Petitioners seek immediate release, arguing that for the medically

vulnerable inmates continued imprisonment at Elkton is unconstitutional given the COVID-

19 outbreak.

Notably, these Petitioners do not seek a commutation of their sentences, but rather

to serve their sentences in home confinement, parole, or in half-way houses at least until

the risk of the virus has abated.  This claim is closer to a challenge to the manner in which

the sentence is served and is therefore cognizable under 28 U.S.C. § 2241.

For the remainder of the less-obviously-vulnerable class the challenges sound more

as a confinement conditions claim.  Petitioners seek the oversight of a public health expert

to mitigate the risk COVID-19 poses to class members that remain incarcerated at Elkton.

Because the not medically vulnerable Elkton inmates seek an alteration to the confinement

conditions, the claims are more like § 1983 claims.

Because Petitioners have brought their claims as a habeas petition, the Court may

only properly address those claims suitable for habeas relief.  The remainder of this order

addresses the habeas claims of the vulnerable subclass alone.

---

[46] *Luedtke v. Berkebile,* 704 F.3d 465, 465-66 (6th Cir. 2013) (citing two additional Sixth Circuit
cases that found the same).
[47] *United States v. Peterman,* 249 F.3d 458, 461 (6th Cir. 2001).

-11-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

### B.  Class Certification

Given the emergency nature of this proceeding, a class certification determination has not yet taken place.  That does not, however, preclude Petitioners from obtaining class-wide interim relief at this stage.  "[T]here is nothing improper about a preliminary injunction preceding a ruling on class certification."[48]  This Court may grant preliminary injunctive relief to a conditional class.

As a preliminary matter, the Court finds that the Petitioners' subclass definition is likely too broad.  Although the risk of complications from COVID-19 is serious for all inmates, the Court limits the subclass to those identified by the CDC as being at higher risk.[49]  This includes all Elkton inmates 65 years or older and those with documented, pre-existing medical conditions, including heart, lung, kidney, and liver conditions, diabetes, conditions causing a person to be immunocompromised (including, but not limited to cancer treatment, transplants, HIV or AIDS, or the use of immune weakening medications), and severe obesity (body mass index of 40 or higher).[50]  The subclass definition excludes those whose only risk factor is a history of smoking, given the difficulty of documenting such occurrence and identifying those individuals through BOP records alone.

Under Federal Rule of Civil Procedure 23(a), a class must meet the requirements of numerosity, commonality, typicality, and adequate representation.  Additionally, one of Rule 23(b)'s requirements must also be satisfied.

---

[48] *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 433 (6th Cir. 2012).
[49] The Court has "broad discretion to modify class definitions." *Ball v. Kasich*, 307 F. Supp.3d 701, 718 (S.D. Ohio Mar. 30, 2018).
[50] CDC, *Coronavirus Disease 2019: People Who Are At Higher Risk*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last visited April 20, 2020).

-12-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

Petitioners have made a sufficient showing at this stage to satisfy the Rule 23(a) factors for the above-defined subclass.

**Numerosity:**  The subclass consists of hundreds of Elkton inmates.[51]

**Commonality:**  "Commonality requires [Petitioners] to demonstrate that the class members have suffered the same injury."[52]  "Their claims must depend upon a common contention ... of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."[53]  This inquiry focuses on whether a class action will generate common answers that are likely to drive resolution of the lawsuit.[54]

In this case, all subclass members have been subjected to dangerous conditions in which they run a high risk of exposure to the deadly COVID-19 virus.  The inquiry driving the litigation is whether the BOP's failure to create safe conditions for inmates with especially vulnerable health has violated those inmates' rights.  Answering this question will determine whether the inmates are entitled to movement from Elkton.

Respondents argue that the subclass lacks commonality given the class's combination of "inmates that have different crimes, sentences, outdates, disciplinary histories, ages, medical histories, proximities to infected inmates, availability of a home landing spot, likelihoods of transmitting the virus to someone at home detention,

---

[51] In accordance with the Court's order, dated April 17, 2020, Respondents submitted for *in camera* review, lists of Elkton inmates with certain medical conditions.  Although the Court cannot say with certainty the exact number of inmates who comprise the subclass, it is satisfied that the number is in the hundreds.
[52] *Ball*, 307 F. Supp.3d at 719 (quoting *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011)).
[53] *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 852-53 (6th Cir. 2013) (citing *Dukes*, 564 U.S. at 350).
[54] *Id.*

-13-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

likelihoods of violation or recidivism, and dangers to the community."[55]

However, the Petitioners seek varied relief that allows the BOP to make individualized determination as to where each subclass member should be placed. Petitioners do not seek to open the prison gates to allow its inmates to run free.  In fact, Petitioners concede that "release" might look different for different inmates.  The Petitioners acknowledge that while some inmates might be placed in home confinement others should be furloughed and that in all instances such "release" could be temporary.[56]

The motivating question in the litigation is whether the subclass members' rights are being violated by the deteriorating conditions at Elkton.  As such, the subclass can satisfy commonality.

**Typicality:** "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'"[57]  Three of the named Petitioners have documented medical issues that are commiserate with those suffered by the subclass.  The fourth named Petitioner, Maximino Nieves, could represent that class, but not the subclass, as he attests that he doesn't have a serious medical history.[58]  Excepting Nieves, nothing suggests that the remaining three Petitioners' claims are distinct from those of the remainder of the subclass.  Typicality is satisfied.[59]

**Adequate Representation:** The Court is satisfied that counsel is competent to represent the class.  Additionally, the interests of the named Petitioners do not conflict with

---

[55] Doc. 10 at 36-37.
[56] Doc. 1 at 2 n. 2.
[57] *In re Whirlpool*, 722 F.3d at 852 (citation omitted).
[58] Doc. 1-8 at 2.
[59] Respondents argue that the named Petitioners defy typicality because they are all ineligible for home confinement.  This contention ignores the fact that other means of removal from Elkton might be available to the named Petitioners other than home confinement, such as transfer to another facility.

-14-

FLORIDA                     NEW JERSEY                   FLORIDA
HANTMAN & ASSOCIATES        JOSEPH J. FERRARA            ENTIN & DELLA FERA, P.A.
650 WEST AVENUE             OF COUNSEL                   OF COUNSEL
SUITE 2408                  111 PATERSON AVENUE          110 SE 6TH ST., SUITE 1970
MIAMI BEACH, FL 33139       HOBOKEN, NJ 07030            FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

those of the other subclass members.

Having satisfied the Rule 23(a) requirements, the subclass must also demonstrate

that it meets one of the Rule 23(b) requirements.  Petitioners argue that "Respondents have

acted on grounds generally applicable to all proposed Class members, and this action seeks

declaratory and injunctive relief."[60]  Indeed, Respondents' failure to protect the inmates

from the spreading virus applies to the entirety of the subclass generally and injunctive

relief is appropriate as to the subclass.  Rule 23(b)(2) is therefore satisfied.

For the purposes of the preliminary injunction inquiry, the Court finds that the

subclass as defined in this order likely meets the requirements for class certification.

### C.  Injunctive Relief

"Four factors guide a district court's decision to issue a preliminary injunction:

whether the plaintiffs will likely win down the road, whether an injunction would prevent

the plaintiffs from being irreparably harmed, whether an injunction would harm others,

and how the injunction would impact the public interest."[61]  The Court considers each in

turn.

#### 1.  Likely Success

Petitioners' claims are predicated on a violation of their Eighth Amendment rights

which protects them from "cruel and unusual punishments."  In order to succeed on an

Eighth Amendment claim, Petitioners must satisfy both an objective and subjective

component.[62]

"The objective component of the test requires the existence of a 'sufficiently serious'

---

[60] Doc. 1 at 31.
[61] *McNeil v. Community Prob. Servs., LLC*, 945 F.3d 991, 994 (6th Cir. 2019).
[62] *Miller v. Calhoun Cty.*, 408 F.3d 803, 812 (6th Cir. 2005).

-15-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

medical need."[63]  Petitioners obviously satisfy this component.  At this moment a deadly

virus is spreading amongst Elkton's population and staff.  For infected inmates, the virus

can lead to pneumonia.  In the worse pneumonia cases, COVID-19 victims suffer

diminishing oxygen absorption, with resulting organ failure leading to death.  Victims

choke to death.  While not every inmate who contracts the virus will die, the subclass

members are at a much greater risk of doing so.  They have a very serious medical need to

be protected from the virus.

The subjective component requires that Respondents have acted with deliberate

indifference, "a degree of culpability greater than mere negligence, but less than 'acts or

omissions for the very purpose of causing harm or with knowledge that harm will result.'"[64]

Petitioners satisfy this standard.

While Respondents offer certain prison-practice changes to show they know

COVID-19 risks and have sought to reduce those risks, the Court still finds that, at this

preliminary stage of the litigation, the Petitioners have sufficiently met the threshold for

showing that Respondents have been deliberately indifferent.

One only need look at Elkton's testing debacle for one example of this deliberate

indifference.  Additionally, Elkton has altogether failed to separate its inmates at least six

feet apart, despite clear CDC guidance for some time that such measures are necessary to

stop the spread and save lives.

Having met both prongs of the Eighth Amendment analysis, Petitioners have

demonstrated a likelihood of success on the merits.

---

[63] *Id.* (citing *Blackmore v. Kalamazoo County*, 390 F.3d 890, 895 (6th Cir. 2004)).
[64] *Id.* at 813 (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).

-16-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

### 2. Irreparable Harm

Respondents argue that Petitioners have not shown that release will reduce the risk of exposure to COVID-19.  But the district court cases Respondents use that have found that release would not lessen the risk to a defendant's health did not deal specifically with Elkton confinement.[65]  Of the reported inmate deaths in nation-wide BOP custody, 6 out of 23, more than 1 in 4, has occurred at Elkton, making it a hotspot for the virus and certainly more dangerous than other facilities.[66]

Respondents also argue that the Petitioners' harm is speculative.  It is true that some subclass members may not die if they contract the virus.  However, it is more than mere speculation that the virus will continue to spread and pose a danger to inmates if BOP does not increase its efforts to stop the spread.[67]  Petitioners have therefore shown a risk for irreparable harm.

### 3. Harm to Others

Respondents argue that the release of inmates from Elkton "would cause substantial damage to others" because there is no assurance that the inmates can care for themselves upon release.[68]  They argue the inmates might be left without access to food, shelter, or medical care.[69]

As stated previously, Petitioners do not ask this Court to throw open the gates to the

---

[65] *United States v. Taylor*, No. 5:19-CR-192-KKC-MAS, 2020 WL 1501917, at *5 (E.D. Ky. Mar. 26, 2020) (noting that the Court believed that the practices at "any facility" were sufficient to protect from COVID-19); *United States v. Steward*, 2020 WL 1468005, at *1 (S.D.N.Y. Mar. 26, 2020) (denying release from Metropolitan Correctional Center).

[66] Federal Bureau of Prisons, *COVID-19 Cases*, https://www.bop.gov/coronavirus/ (last visited April 22, 2020).

[67] *See* Doc. 14-1 at 5-10 (describing the inadequacy of the Elkton measures and the risk of spread within the prison environment).

[68] Doc. 10 at 3.

[69] *Id.* at 3, 33-34.

-17-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

prison and leave the inmates that are released to fend for themselves.  Instead, Petitioners

seek "release" that consists of moving vulnerable inmates to various other types of

confinement so that they are no longer at risk of dying from the virus.  And as Respondents

acknowledge, it is BOP's current policy to quarantine all inmates that are transferred from

Elkton for 14 days before transfer.[70]  The continued implementation of this policy reduces

the risk that an inmate with COVID-19 will carry the virus with him outside of the prison.

Furthermore, there is a continued risk of harm to others, including prison staff, if

inmates remain in the prison and the virus continues to thrive among the dense inmate

population.

### 4.  Public Interest

Respondents argue that the public faces a grave danger if inmates are to be released

*en masse* onto the streets.  They say:

> Our over-burdened police and safety services should not be forced to
> deal with the indiscriminate release of thousands of prisoners on the
> streets without any verification that those prisoners will follow the laws
> when they are released, that they will have a safe place to go where
> they will not be mingling with their former criminal associates, and that
> they will not return to their former ways as soon as they walk through
> the prison gates.[71]

First, Respondents might as well be arguing against the release of any inmate, at any

time, for any reason, because even in the best of circumstances the country's criminal

justice system has no way, short of life imprisonment, of ensuring former prisoners do not

recidivate.  The COVID-19 pandemic has not suddenly raised this issue.

---

[70] Doc. 10-2 at 7.
[71] Doc. 10 at 41-42.

-18-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

Third, the danger of recidivism reduces with age, especially after age 40.[72]  The

subclass inmates are older and by definition, the vulnerable sub-class inmates suffer serious

medical conditions.

Second, it bears repeating that the Petitioners are not asking the Court to dump

inmates out into the streets.  No one's interest would be served in doing so.  The Court is

confident that the transfer of prisoners from Elkton to other means of confinement could

accomplish the goal of protecting Elkton's vulnerable population while also protecting

public safety.

Third, six Elkton inmates have already died.  Likely, they died after agonizing days

under intensive care, most probably with ventilators.  The BOP absorbs the high cost of this

treatment—costs that are likely multiples of what it would have cost to test each Elkton

inmate and guard.

Finally, "it is always in the public interest to prevent the violation of a party's

constitutional rights."[73]

### D. The Prison Litigation Reform Act

Respondents argue that the Prison Litigation Reform Act ("PLRA"),

18 U.S.C. § 3626, bars this Court from granting the inmates' release.[74]  This is not so.  The

PLRA does not extend to "habeas corpus proceedings challenging the fact or duration of

confinement in prison."[75]  Because the Court has determined that the subclass's claims are

---

[72] *See generally* United States Sentencing Commission, *The Effects of Aging on Recidivism Among Federal Offenders,* (Dec. 2017), https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.
[73] *G & V Lounge, Inc. v. Mich. Liquor Control Comm'n,* 23 F.3d 1071, 1079 (6th Cir. 1994).
[74] Doc. 10 at 16.
[75] 18 U.S.C. § 3626(g)(2).

-19-

| FLORIDA | NEW JERSEY | FLORIDA |
| HANTMAN & ASSOCIATES | JOSEPH J. FERRARA | ENTIN & DELLA FERA, P.A. |
| 650 WEST AVENUE | OF COUNSEL | OF COUNSEL |
| SUITE 2408 | 111 PATERSON AVENUE | 110 SE 6TH ST., SUITE 1970 |
| MIAMI BEACH, FL 33139 | HOBOKEN, NJ 07030 | FORT LAUDERDALE, FL 33301 |

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

properly before the Court as a habeas action, this prohibition does not apply.[76]

Additionally, Respondents argue that a release order may only be entered by a three-judge court and that the court must find that "crowding is the primary cause of the violation of a Federal right" and "no other relief will remedy the violation."[77]  As stated previously the PLRA does not bar this habeas proceeding.  However, even if it did, the Court is not ordering the release of the prisoners.  Instead, the inmates will remain in BOP custody, but the conditions of their confinement will be enlarged.

### III.    Conclusion

The Court **GRANTS IN PART** and **DENIES IN PART** Petitioners' motion for relief.

The Court orders the Respondents to identify, within one (1) day all members of the subclass as defined in this Order.  Respondents must identify in the list each subclass member's sentencing court and the case number of their underlying criminal conviction.

Following identification, the Court orders Respondents to evaluate each subclass member's eligibility for transfer out of Elkton through any means, including but not limited to compassionate release, parole or community supervision, transfer furlough, or non-transfer furlough within two (2) weeks.

In undertaking this evaluation, Respondents will prioritize the review by the medical threat level.   For example, older inmates with heart, pulmonary, diabetes or immunity risks should receive review priority over subclass members who are younger.

Subclass members who are ineligible for compassionate release, home release, or

---

[76] See *Colton v. Ashcroft*, 299 F. Supp. 2d 681, (E.D. Ky. 2004) ("28 U.S.C. §§ 2241, 2254, and 2255 filings have been deemed not covered by the PLRA.").
[77] 18 U.S.C. § 3626(a)(3)(E).

-20-

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Case No. 4:20-cv-00794
Gwin, J.

parole or community supervision must be transferred to another BOP facility where

appropriate measures, such as testing and single-cell placement, or social distancing, may

be accomplished.  In transferring subclass members, Respondents must continue to comply

with BOP policy of quarantining inmates for 14 days prior to transfer out of Elkton.

Any subclass members transferred out of Elkton may not be returned to the facility

until the threat of the virus is abated or until a vaccine is available and Elkton obtains

sufficient vaccine supplies to vaccinate its population, whichever occurs first.

IT IS SO ORDERED.


Dated: April 22, 2020                            *s/*      *James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

-21-

25

FLORIDA                          NEW JERSEY                    FLORIDA
HANTMAN & ASSOCIATES             JOSEPH J. FERRARA             ENTIN & DELLA FERA, P.A.
650 WEST AVENUE                  OF COUNSEL                    OF COUNSEL
SUITE 2408                       111 PATERSON AVENUE           110 SE 6TH ST., SUITE 1970
MIAMI BEACH, FL 33139            HOBOKEN, NJ 07030             FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

Exhibit 2

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.



**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

April 23, 2020

**BY ECF AND E-MAIL**

The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
Thurgood Marshall U.S. Courthouse
New York, New York 10007

      Re:    <u>United States v. Lewis Stahl</u>, 18 Cr. 694 (RA)

Dear Judge Abrams:

      In response to the Court's order of April 21, 2020, the Government encloses a declaration from Jennifer Broton, Associate Warden of FCI Miami, addressing the BOP's home-confinement placement authority. At paragraph 19, Associate Warden Broton describes the prioritization of inmates based on the portion of sentence served and time remaining to be served. The Government also respectfully directs the Court's attention to paragraph 22 of the declaration, which affirms that Stahl has been approved for a home-confinement placement on Friday, April 24, 2020.

      Respectfully submitted,

      GEOFFREY S. BERMAN
      United States Attorney for the
      Southern District of New York

      By: ___/s/_____
          Olga I. Zverovich
          Assistant United States Attorney
          (212) 637-2514

cc:    Patricia Pileggi, Esq. and Brittany Sokoloff, Esq. (via ECF and e-mail)

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### UNITED STATES DISTRICT COURT
### DISTRICT OF SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

LEWIS STAHL,

Defendant.

No. 18 Cr. 694 (RA)

**DECLARATION OF
JENNIFER A. BROTON**

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1    I, Jennifer Broton, declare the following under 28 U.S.C. § 1746, and state that
2    under penalty of perjury the following is true and correct to the best of my knowledge
3    and belief:
4    **I.    Personal Background**
5        1.    I am currently employed by the Federal Bureau of Prisons (BOP) of the
6    United States Department of Justice, as Associate Warden, at FCI Miami.
7        2.    As Associate Warden at FCI Miami, I serve as a deputy to the Warden.
8    I have been with the agency for 23 years, serving in various positions of increasing
9    responsibility in Health Services, Correctional Services, Inmate/Correctional
10   Systems, and Unit Management. Prior to my selection as an Associate Warden, I
11   served as the Senior Correctional Programs Specialist for the North Central Region
12   for three years. Currently, I am responsible for exercising control and supervision of
13   various aspects of the institution's functions such as programs, operations, medical,
14   mental health, clinical programs, custody, transportation, industries and education. I
15   serve as acting Warden during the Warden's absence. In the absence of the Warden,
16   and when designated, I assume full administrative responsibility for FCI Miami.
17   **II.    The BOP's Authority to Place Inmates on Home Confinement**
18       3.    The BOP's statutory authority to transfer prisoners to home
19   confinement rests in 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541. The BOP's policy
20   and procedures regarding home confinement are outlined in BOP Program
21   Statement 7320.01, *Home Confinement* and BOP Operations Memorandum, *Home
22   Confinement under the First Step Act*, both of which are available on www.bop.gov via
23   the Resources tab. Both statutes set forth certain limitations with respect to the
24   BOP's transfer authority.  *See* 18 U.S.C. § 3624(c)(2) and 34 U.S.C. § 60541.
25   However, pursuant to the Attorney General's directives in light of the COVID-19
26   pandemic, dated March 26, 2020, and April 3, 2020, *infra*, and given the surge in
27   positive cases at select sites, the BOP began immediately reviewing all inmates who
28

Declaration of Jennifer A. Broton | 1

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1   have COVID-19 risk factors, as described by the Centers for Disease Control and

2   Prevention (CDC), to determine which inmates are suitable for home confinement.

3   Since the release of the Attorney General's original memorandum dated March 26,

4   2020, the BOP is prioritizing transfers to home confinement of all suitable inmates

5   as an appropriate response to the COVID-19 pandemic.

6   **III.    The Attorney General's Memorandum for the Director of the Bureau of**

7   **Prisons, dated March 26, 2020**

8           4.      On March 26, 2020, the Attorney General issued a Memorandum for

9   the Director of the Bureau of Prisons (the March 26, 2020 Memorandum) to ensure

10  that, in light of the COVID-19 pandemic, BOP utilizes home confinement, where

11  appropriate, to protect the health and safety of BOP personnel and people in BOP's

12  custody.  Pursuant to the March 26, 2020 Memorandum, BOP is prioritizing the use

13  of its statutory authorities to grant home confinement for inmates seeking transfer

14  in connection with the ongoing COVID-19 pandemic.  It was noted in the March

15  26, 2020 Memorandum that many inmates will be safer in BOP facilities where the

16  population is controlled and there is ready access to doctors and medical care.  But

17  for some eligible inmates, home confinement might be more effective in protecting

18  their health.

19          5.      In assessing whether home confinement should be granted pursuant to

20  the March 26, 2020 Memorandum, BOP considers the totality of circumstances for

21  each individual inmate, the statutory requirements for home confinement, and the

22  following non-exhaustive list of discretionary factors:

23              a.  The age and vulnerability of the inmate to COVID-19, in accordance

24                  with the CDC guidelines;

25              b.  The security level of the facility currently holding the inmate, with

26                  priority given to inmates residing in low and minimum security facilities;

27

28

Declaration of Jennifer A. Broton | 2

FLORIDA                         NEW JERSEY                      FLORIDA
HANTMAN & ASSOCIATES            JOSEPH J. FERRARA               ENTIN & DELLA FERA, P.A.
650 WEST AVENUE                 OF COUNSEL                      OF COUNSEL
SUITE 2408                      111 PATERSON AVENUE             110 SE 6TH ST., SUITE 1970
MIAMI BEACH, FL 33139           HOBOKEN, NJ 07030               FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1      c. The inmate's conduct in prison, with inmates who have engaged in

2          violent or gang-related activity in prison or who have incurred a BOP

3          violation within the last year not receiving priority treatment;

4      d. The inmate's score under PATTERN (the Prisoner Assessment Tool

5          Targeting Estimated Risk and Need),[1] with inmates who have anything

6          above a minimum score not receiving priority treatment;

7      e. Whether the inmate has a demonstrated and verifiable re-entry plan that

8          will prevent recidivism and maximize public safety, including verification

9          that the conditions under which the inmate would be confined upon

10     release would present a lower risk of contracting COVID-19 than the

11     inmate would face in his or her BOP facility;

12     f. The inmate's crime of conviction, and assessment of the danger posed

13        by the inmate to the community.  Some offenses, such as sex offenses,

14        will render an inmate ineligible for home confinement.  Other serious

15        offenses weigh heavily against consideration for home confinement.

16     6.     In addition to setting forth these factors, the March 26, 2020

17 Memorandum stated that before granting any inmate discretionary release, the BOP

18 Medical Director, or someone he designates, will, based on CDC guidance, make an

19 assessment of the inmate's risk factors for severe COVID-19 illness, risks of

20 COVID-19 at the inmate's prison facility, as well as the risk of COVID-19 at the

21 location in which the inmate seeks home confinement.  The BOP will not grant home

22 confinement to inmates when doing so is likely to increase their risk of contracting

23 COVID-19.  The BOP will grant home confinement only when it has determined --

24 based on the totality of circumstances for each individual inmate -- that transfer to

25 home confinement is likely not to increase the inmate's risk of contracting COVID-

26 19.

27

28     [1] For more information on PATTERN, please visit www.bop.gov via Inmates/ First Step Act tab.

Declaration of Jennifer A. Broton | 3

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1        7.    Moreover, the March 26, 2020 Memorandum noted that for the

2    protection of the public, any inmate to whom BOP grants home confinement is to

3    be placed in a mandatory 14-day quarantine before that inmate is discharged from a

4    BOP facility to home confinement.  Inmates transferred to home confinement under

5    this prioritized process are also subject to location monitoring devices and, where a

6    court order is entered, are subject to supervised release.

7    **IV.   The CARES Act and the Attorney General's Memorandum for the**
          **Director of the Bureau of Prisons, dated April 3, 2020**

8

9        8.    The Coronavirus Aid, Relief, and Economic Security (CARES) Act,

10   Public Law No. 116-236 (enacted March 27, 2020), authorizes the Attorney General

11   to expand the cohort of inmates who can be considered for home confinement upon

12   his finding of emergency conditions which are materially affecting the function of

13   the BOP.  On April 3, 2020, the Attorney General made that finding, and in a

14   Memorandum for the Director of the Bureau of Prisons (April 3, 2020

15   Memorandum), authorized the Director to immediately maximize appropriate

16   transfers to home confinement of all appropriate inmates held at BOP facilities where

17   the Director determines that COVID-19 is materially affecting operations.

18       9.    The April 3, 2020 Memorandum specifically stated that the BOP must

19   move with dispatch in using home confinement, where appropriate, to move

20   vulnerable inmates out of FCI Oakdale, FCI Danbury, and FCI Elkton, and to give

21   priority to those institutions, and others similarly affected, as the BOP continues to

22   process the remaining inmates who are eligible for home confinement under pre-

23   CARES Act standards.

24       10.    The April 3, 2020 Memorandum directed that the BOP give priority in

25   implementing the new standards to the most vulnerable inmates at the most affected

26   facilities and was explicit that the BOP should begin implementing this directive

27   immediately at the identified facilities and any other facilities at risk of similar

28

Declaration of Jennifer A. Broton | 4

FLORIDA                 NEW JERSEY                 FLORIDA
HANTMAN & ASSOCIATES      JOSEPH J. FERRARA        ENTIN & DELLA FERA, P.A.
650 WEST AVENUE             OF COUNSEL              OF COUNSEL
SUITE 2408                  111 PATERSON AVENUE    110 SE 6TH ST., SUITE 1970
MIAMI BEACH, FL 33139       HOBOKEN, NJ 07030        FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1  problems. The April 3, 2020 Memorandum stated that the review should include a

2  much broader pool of at-risk inmates—not only those who were eligible for transfer

3  prior to the Attorney General exercising his authority under the CARES Act.

4      11.    For inmates deemed suitable candidates for home confinement, the

5  April 3, 2020 Memorandum directed the BOP to immediately process these inmates

6  for transfer and then immediately transfer them following a 14-day quarantine at an

7  appropriate BOP facility. The April 3, 2020 Memorandum further authorized BOP

8  to, in appropriate cases, require that the inmate being transferred undergo his or her

9  14-day quarantine in the residence to which the inmate is being transferred rather

10  than in the BOP facility from which the inmate is being transferred. The assessment

11  of all inmates remains guided by the factors in the March 26, 2020 Memorandum.

12      12.    The April 3, 2020 Memorandum also recognized that the BOP has

13  limited resources to monitor inmates on home confinement and that the U.S.

14  Probation Office is unable to monitor large number of inmates in the community,

15  and authorized the BOP to transfer inmates to home confinement even if electronic

16  monitoring is not available, so long as it determines in every instance that doing so is

17  appropriate and consistent with the obligation to protect public safety.

18      13.    Lastly, the April 3, 2020 Memorandum stated that it is essential for the

19  BOP to continue making determinations for home confinement in a careful and

20  individualized way that remains faithful to the duty of protecting the public and law

21  enforcement officers.

22  **V.    The BOP's Implementation of the March 26, 2020 and the April 3, 2020**
23         **Memoranda**

24      14.    The BOP is devoting all available resources to executing the Attorney

25  General's directives, with such resources tailored and prioritized according to the

26  needs of individual institutions across the country. The BOP is assessing the inmate

27  population to determine which inmates would be appropriate for transfer under this

28

Declaration of Jennifer A. Broton | 5

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1  priority program.   The BOP is then processing those inmates for transfer as

2  expeditiously as possible.

3      15.   The BOP is also frequently updating its public website to provide

4  information and responses to frequently asked questions regarding its response to

5  the COVID-19 pandemic, including providing information regarding its

6  implementation of the Attorney General's directives.

7      16.   The BOP has increased home confinement by over 53% since March

8  2020, and is continuing to aggressively screen inmates for home confinement. Since

9  the March 26, 2020 Memorandum instructing the BOP to prioritize home

10  confinement as an appropriate response to the COVID-19 pandemic, the BOP has

11  placed an additional 1,501 inmates on home confinement.

12      17.   Inmates do not need to apply to be considered for home confinement.

13  BOP Case Management staff are urgently reviewing all inmates to determine which

14  ones meet the criteria established by the Attorney General.  While all inmates are

15  being reviewed for suitability for home confinement, any inmate who believes he or

16  she is eligible may request to be referred to home confinement and provide a release

17  plan to his or her Case Manager.

18      18.   It should be noted that for public safety reasons, in accordance with the

19  March 26, 2020 Memorandum, and to ensure BOP is deploying its limited resources

20  in the most effective manner, the BOP is currently assessing a number of factors to

21  ensure that an inmate is suitable for home confinement including, but not limited to,

22  reviewing the inmate's institutional discipline history for the last twelve months;

23  ensuring that the inmate has a verifiable release plan; verifying that the inmate's

24  primary offense is not violent, a sex offense, or terrorism related; and confirming the

25  inmate does not have a current detainer.

26      19.   In addition, and in order to prioritize its limited resources, BOP has

27  generally prioritized for home confinement those inmates who have served a certain

28

Declaration of Jennifer A. Broton | 6

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1   portion of their sentences, or who have only a relatively short amount of time

2   remaining in those sentences.  While these priority factors are subject to deviation in

3   BOP's discretion in certain circumstances and are subject to revision as the situation

4   progresses, BOP is at this time prioritizing for consideration those inmates who

5   either (1) have served 50% or more of their sentences, or (2) have 18 months or less

6   remaining in their sentences and have served 25% or more of their sentences.  As

7   BOP processes the inmates eligible for home confinement under these criteria and

8   learns more about the COVID-19 pandemic and its effect on BOP facilities, it is

9   assessing whether and how to otherwise prioritize consideration.

10      20.    If the incarcerated individual does not qualify for home confinement

11   under BOP criteria, an inmate may be reviewed for placement in a Residential

12   Reentry Center and home confinement at a later stage in accordance with applicable

13   laws and BOP policies.

14   **VI.   Measures to Protect Inmate and Staff Safety**

15      21.    In response to the pandemic, BOP has taken significant measures to

16   protect the health of the inmates in its charge.  These steps include, but are not

17   limited to the following:

18          a.  Beginning April 1, 2020, BOP implemented Phase Five of the Action

19              Plan, which currently governs operations.  The current modified

20              operations plan requires that all inmates in every BOP institution be

21              secured in their assigned cells/quarters for a period of at least 14 days,

22              in order to stop any spread of the disease. Only limited group gathering

23              is afforded, with attention to social distancing to the extent possible, to

24              facilitate commissary, laundry, showers, telephone, and computer access.

25              Further, BOP has severely limited the movement of inmates and

26              detainees among its facilities. Though there will be exceptions for

27

28

Declaration of Jennifer A. Broton | 7

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1     medical treatment and similar exigencies, this step as well will limit

2     transmissions.

3     b. All staff and inmates have been and will continue to be issued an

4       appropriate face covering and strongly encouraged to wear the face

5       covering when in public areas when social distancing cannot be

6       achieved.

7     c. Every newly admitted inmate is screened for COVID-19 exposure risk

8       factors and symptoms. Asymptomatic inmates with risk of exposure are

9       placed in quarantine. Symptomatic inmates are placed in isolation until

10      they test negative for COVID-19 or are cleared by medical staff as

11      meeting CDC criteria for release from isolation. In addition, in areas

12      with sustained community transmission and at medical centers, all staff

13      are screened for symptoms. Staff registering a temperature of 100.4

14      degrees Fahrenheit or higher are barred from the facility on that basis

15      alone. A staff member with a stuffy or runny nose can be placed on leave

16      by a medical officer.

17    d. Contractor access to BOP facilities is restricted to only those performing

18      essential services (e.g. medical or mental health care, religious, etc.) or

19      those who perform necessary maintenance on essential systems. All

20      volunteer visits are suspended absent authorization by the Deputy

21      Director of BOP.  Any contractor or volunteer who requires access will

22      be screened for symptoms and risk factors.

23    e. Social and legal visits were stopped as of March 13, 2020, and remain

24      suspended until at least May 18, 2020, to limit the number of people

25      entering the facility and interacting with inmates. In order to ensure that

26      familial relationships are maintained throughout this disruption, BOP

27      has increased detainees' telephone allowance to 500 minutes per month.

28

Declaration of Jennifer A. Broton | 8

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

1    Tours of facilities are also suspended. Legal visits will be permitted on a
2    case-by-case basis after the attorney has been screened for infection in
3    accordance with the screening protocols in place for prison staff,
4    contractors, and visitors.

5    f.    Further details and updates of BOP's modified operations are available
6    to the public on the BOP website at a regularly updated resource page:
7    www.bop.gov/coronavirus/index.jsp.

## VII.   Lewis Stahl (#86151-054) at FCI Miami

22.    The April 3, 2020 Memorandum authorizes FCI Miami, in appropriate cases, to require that the inmate being transferred undergo his or her 14-day quarantine in the residence to which the inmate is being transferred rather than in the BOP facility from which the inmate is being transferred.  Prior to departure, federal inmate Lewis Stahl (#86151-054) will be screened for COVID-19 and he will be required to quarantine at his approved home confinement placement upon arrival for an additional 14 days.  A review of SENTRY, (FBOP's primary mission support database, which collects, maintains, and tracks critical inmate information) reflects inmate Stahl, has been approved for a home confinement placement on Friday, April 24, 2020.

23.    Mr. Lewis Stahl must report to Salvation Army CTC in West Palm Beach, Florida for orientation and then he will be released to home confinement placement. The Salvation Army CTC is a Residential Reentry Center (RRC).  Oversight of that particular facility is provided by the Miami Residential Reentry Management Office. The Salvation Army CTC provides supervision to inmates who are designated to home confinement placements.  Inmates with designations to home confinement are released to an approved residence.

Declaration of Jennifer A. Broton| 9

FLORIDA                         NEW JERSEY                      FLORIDA
HANTMAN & ASSOCIATES            JOSEPH J. FERRARA               ENTIN & DELLA FERA, P.A.
650 WEST AVENUE                 OF COUNSEL                      OF COUNSEL
SUITE 2408                      111 PATERSON AVENUE             110 SE 6TH ST., SUITE 1970
MIAMI BEACH, FL 33139           HOBOKEN, NJ 07030               FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.

## VIII.   Compassionate Release/Reduction in Sentence Procedures

24.   The BOP lacks the authority to provide inmates with a reduction in sentence through compassionate or "early release."  Rather, only an Article III judge—specifically, the inmate's sentencing judge—may authorize such a reduction of an inmate's federal sentence.  However, on an inmate's request, the Director of the BOP may make a motion to an inmate's sentencing court to reduce a term of imprisonment under 18 U.S.C. § 4205(g) and 18 U.S.C. § 3582(c)(1)(A).  The BOP uses these statutory authorities in "extraordinary or compelling circumstances" which could not reasonably have been foreseen by the court at the time of sentencing.  This process is outlined in BOP Program Statement 5050.50, *Compassionate Release/Reduction In Sentence Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)*.  (This BOP program statement is available at www.bop.gov via the Resources tab).

25.   Additionally, the First Step Act specifies that an inmate may file a Motion for Reduction of Sentence directly in the sentencing court after exhaustion of administrative remedies, or 30 days from the date the warden receives such a request from the inmate, whichever is earlier.  *See* 18 U.S.C. § 3582(c)(1)(A).

Executed on this 23 day of April, 2020.

Jennifer A. Broton
Associate Warden
Federal Bureau of Prisons
FCI Miami

Declaration of Jennifer A. Broton| 10

FLORIDA
HANTMAN & ASSOCIATES
650 WEST AVENUE
SUITE 2408
MIAMI BEACH, FL 33139

NEW JERSEY
JOSEPH J. FERRARA
OF COUNSEL
111 PATERSON AVENUE
HOBOKEN, NJ 07030

FLORIDA
ENTIN & DELLA FERA, P.A.
OF COUNSEL
110 SE 6TH ST., SUITE 1970
FORT LAUDERDALE, FL 33301

PLEASE SEND ALL CORRESPONDENCE TO THE NEW YORK, NY ADDRESS LISTED ABOVE.